IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TIMOTHY J. BURCH,** | |
| **Plaintiff**, | |
| **v.** | |
| **KRIS KOBACH, et al.,** | **Case No. 23-3022-DDC-BGS** |
| **Defendants**. | |

## <u>MEMORANDUM AND ORDER</u>

Pro se plaintiff Timothy J. Burch brings this 42 U.S.C. § 1983 lawsuit against Kansas

Attorney General Kris Kobach,[1] Secretary of the Kansas Department on Aging and Disability

Services Laura Howard, and Judge Constance Alvey of Kansas's 29th Judicial District.  Doc. 20

at 1 (Am. Compl. ¶¶ A.2–4.).  Mr. Burch has been civilly confined under the Kansas Sexually

Violent Predator Act (KSVPA) for over 20 years.  His continued confinement, he argues, is the

product of many unconstitutional KSVPA procedures.  He seeks declaratory and injunctive relief

to determine his rights in KSVPA proceedings going forward.[2]  Defendants filed a Motion to

---

[1]    Mr. Burch originally sued Derek Schmidt, the former Kansas Attorney General.  Doc. 1 at 1.
Under Fed. R. Civ. P. 25(d), the successor of a public officer who is a party in their official capacity
automatically is substituted into the case.  Kris Kobach succeeded to the role and the court substitutes him
here.

[2]    Mr. Burch's Complaint is unclear whether he sues defendants in their individual or official
capacities.  But he seeks only prospective relief.  Doc. 20 at 3 (Am. Compl. ¶ B.1.); *see below* § III.F.
State sovereign immunity limits the scope of claims one can make against a state official, but it's also
clear that Mr. Burch may sue for "prospective injunctive or declaratory relief from an ongoing violation
of the Constitution or federal laws."  *MCI Telecomms. Corp. v. Pub. Serv. Comm'n of Utah*, 216 F.3d
929, 935 (10th Cir. 2000).  A § 1983 plaintiff "may sue individual-capacity defendants only for money
damages and official-capacity defendants for only injunctive relief."  *Brown v. Montoya*, 662 F.3d 1152,
1161 n.5 (10th Cir. 2011).  So, the court assumes Mr. Burch intended to sue the government defendants
only in their official capacities.

Dismiss (Doc. 39) plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).
Doc. 40 at 1.  Mr. Burch also filed a Motion for Ruling (Doc. 50).  The court resolves both
motions here.

Defendants argue Mr. Burch's claims are barred by different combinations of defenses.[3]
*See* Doc. 40 at 5–6.  Among them:  Mr. Burch lacks standing; one of his claims fails because of
the Supreme Court's decision in *Kansas v. Hendricks*; his claims against Judge Alvey fail
because of sovereign immunity; collateral estoppel precludes relitigating of some of the issues;
Mr. Burch has failed to state a claim for relief; and many of his claims are barred by the *Heck*
and/or *Rooker-Feldman* doctrines.  *Id.* at 4–6.  The court grants in part and denies in part
defendants' Motion to Dismiss.  The court explains the reasons for its decisions, below.

## I.   Factual Background

The following facts come from Mr. Burch's Amended Complaint (Doc. 20), Mr. Burch's
Response to Defendants' Motion to Dismiss (Doc. 46),[4] and judicially noticed court documents.[5]

---

[3]    Hoping to bring some order to the maze of claims asserted and decisions made by this Order, the court appends a chart of Mr. Burch's claims and their dispositions to this Memorandum and Order.

[4]    The court considers facts alleged in Mr. Burch's Response which are consistent with his Amended Complaint because he proceeds pro se, as explained in detail below.  *See below* § III.A.1.

[5]    In considering defendants' motion, the court can consider documents subject to judicial notice. Defendants ask this court to take judicial notice of the state court records cited in their Memorandum in Support of Defendants' Motion to Dismiss (Doc. 40) and Reply in Support of Defendants' Motion to Dismiss (Doc. 49).  Doc. 40 at 2 n.3; Doc. 49 at 4 n.1.  Though it evaluates material outside of the complaint, the court properly can take judicial notice of these proceedings and avoid converting the motion to dismiss into a motion for summary judgment.  *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." (citation omitted)).

"In ruling on a motion to dismiss, a federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue." *Bruce v. City & Cnty. of Denver*,

The court accepts Mr. Burch's "well-pleaded facts as true, view[s] them in the light most favorable to [him], and draw[s] all reasonable inferences from the facts" in his favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citation omitted).

### Civil Commitment

Mr. Burch has been civilly committed under the KSVPA since 2001. Doc. 20 at 3 (Am. Compl. ¶ C.2.1.). The KSVPA provides three stages to its program: secure confinement, transitional release, and conditional release. *Id.* at 9 (Am. Compl. ¶ C.2.18.). Each year, securely confined individuals undergo a review process to determine whether their "mental abnormality or personality disorder" has changed. *See id.* at 7 (Am. Compl. ¶ C.2.14.). This process has two stages: *first*, a probable cause hearing where the committed individual has the burden of proof, and *second*, an evidentiary hearing that shifts the burden to the state. *Id.* at 4, 6 (Am. Compl. ¶ C.2.7., 12.); Kan. Stat. Ann. § 59-29a08. Mr. Burch has been committed for more than 20 years and has had at least nineteen annual reviews. Doc. 46 at 10. If the judge determines that the person is safe for transitional release, the person is released from secure confinement and placed in the next stage of the KSVPA system. *See* Doc. 20 at 7 (Am. Compl. ¶ C.2.14.).

### 2021 Annual Review

During Mr. Burch's 2021 annual review process, he requested an independent examiner to assess his mental state. *Id.* at 4 (Am. Compl. ¶ C.2.5.). He also asked to conduct discovery before the probable cause hearing. *Id.* (Am. Compl. ¶ C.2.6.). The court denied these requests.

---

57 F.4th 738, 741 n.3 (10th Cir. 2023) (citation omitted). "However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Id.* (quotation cleaned up). The court thus judicially notices *In re Burch*, No. 2001-PR-000412 (Kan. 29th Jud. Dist. Ct. Sept. 2, 2021), *In re Burch*, 515 P.3d 296, 2022 WL 3568607 (Kan. Ct. App. 2022), *In re Burch*, No. 2001-PR-000412 (Kan. 29th Jud. Dist. Ct. June 20, 2023), and *In re Burch*, No. 2001-PR-000412 (Kan. 29th Jud. Dist. Ct. Aug. 31, 2022), at defendants' request. Doc. 40 at 2 n.3; Doc. 49 at 4 n.1.

*Id.* (Am. Compl. ¶¶ C.2.5.–6.).  Mr. Burch also wasn't allowed to attend the probable cause hearing and, according to him, to "present any evidence on his behalf[.]"  *Id.* (Am. Compl. ¶ C.2.7.).  At the hearing, Mr. Burch says Judge Constance Alvey held that his confinement should continue because of his interactions with others; noncompletion of the program; disrespect for the rules; and having "a wall that impedes progression in the program."  *Id.* at 5 (Am. Compl. ¶ C.2.9.d.).  Judge Alvey determined that Mr. Burch's "mental abnormality or personality disorder [had] not so significantly changed that he [was] safe to be placed in transitional release."  *In re Burch*, No. 2001-PR-000412, at *2.  And Judge Alvey found that Mr. Burch's "hostility toward staff" contributed to the determination that Mr. Burch wasn't entitled to an independent examiner.  *Id.* at 1.

Mr. Burch appealed—pro se—Judge Alvey's decision to the Kansas Court of Appeals. Doc. 20 at 5 (Am. Compl. ¶ C.2.10.a.).  And the Kansas Court of Appeals affirmed it.  *Id.* at 6 (Am. Compl. ¶ C.2.10.d.).  Undeterred, Mr. Burch petitioned the Kansas Supreme Court for review, which it declined.  *Id.* (Am. Compl. ¶¶ C.2.10.e.–f.).

Mr. Burch's Amended Complaint raises a plethora of claims challenging the KSVPA annual review and conditional release procedures.  He alleges that defendants—acting under Kansas law—violated his constitutional rights.  *See* Doc. 20 at 1–2 (Am. Compl. ¶¶ A.2.–4.). And he asks this court to safeguard his constitutional rights going forward.  Defendants, for their part, argue dismissal is proper under Rules 12(b)(1) and 12(b)(6).  Doc. 40 at 1.  The court evaluates defendants' motion.  But first, it recites the governing standard for each type of dismissal sought by defendants here.

## II.    Legal Standard

### A.    Rule 12(b)(1) Dismissal

Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject

matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction

and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d

952, 955 (10th Cir. 2002). "A court lacking jurisdiction cannot render judgment but must

dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is

lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party

invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins.

Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*,

906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate

showing by the party invoking federal jurisdiction").

There are two types of Rule 12(b)(1) challenges: (1) facial attacks on allegations in the

complaint to challenge their sufficiency and (2) factual attacks on the facts on which subject

matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995),

*abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001);

*Blood v. Labette Cnty. Med. Ctr.*, No. 22-cv-04036-HLT-KGG, 2022 WL 11745549, at *2 (D.

Kan. Oct. 20, 2022) (explaining the two forms for a motion to dismiss for lack of jurisdiction

under Rule 12(b)(1)). Facial attacks are resolved based solely on the complaint, accepting all the

plaintiff's allegations as true. *Holt*, 46 F.3d at 1002. The court may resolve factual attacks

considering matters outside the complaint, and the allegations in the complaint aren't

presumptively true. *Id.* at 1003. But, when resolution of the jurisdictional question is

"intertwined with the merits of the case[,]" the court must convert a Rule 12(b)(1) motion to

dismiss into a 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. *Id.* A

jurisdictional question is intertwined with the merits when "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Paper, Allied-Indus., Chem. & Energy Workers Intern. Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) (internal quotation and citation omitted).

**B.      Rule 12(b)(6) Dismissal**

Under Rule 12(b)(6), a party may move to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).  For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, simply "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Because Mr. Burch appears pro se, the court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court can't assume the role of his

advocate. *Id.* And plaintiff's pro se status doesn't excuse him from "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* Simply put, the court can't "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

## III.   Analysis

To make sense of Mr. Burch's claims and defendants' defenses, the court's analysis proceeds like this: *First*, the court addresses Mr. Burch's standing to request prospective relief. *Second*, it considers whether Mr. Burch's claims are affected by the Supreme Court's decision in *Kansas v. Hendricks*. *Third*, it addresses defendants' arguments that sovereign immunity protects Judge Alvey and its collateral estoppel defense. *Finally*, the court addresses defendants' failure to state a claim argument, why it construes Mr. Burch's claims as wholly prospective, and how that construction affects defendants' arguments.

### A.   Standing to Request Prospective Relief

Defendants assert that Mr. Burch doesn't have standing to challenge the KSVPA's conditional release program and the adequacy of SVP treatment, or to request prospective relief.[6] Doc. 40 at 19.  The court's analysis of defendants' standing challenge starts by addressing

---

[6]     Defendants' motion jumps back and forth between arguments that Mr. Burch lacks standing and that his claims aren't ripe. *See* Doc. 40 at 19–24.  While it's true that ripeness and standing are close procedural cousins, the two are separate doctrines. *Skull Valley Band of Goshute Indians v. Nielson*, 376 F.3d 1223, 1234 (10th Cir. 2004) ("[A]lthough standing and ripeness are technically different doctrines, they are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention." (quotation cleaned up)).  For example, defendants squarely present on standing grounds their argument about Mr. Burch's claims for prospective relief, even though this argument includes a subheading reading "Burch's claims for prospective relief are not ripe for review." Doc. 40 at 21–24.  The court construes all of Mr. Burch's claims as seeking prospective relief. *See below* § III.F.  Because defendants address that type of relief on standing grounds, the court does the same and addresses each claim on standing—instead of ripeness—grounds.

whether defendants' challenge is facial or factual, the standing doctrine generally, and whether Mr. Burch has standing for each of his requests for relief.

### 1. Facial vs. Factual

Standing challenges are jurisdictional in nature and a Rule 12(b)(1) motion properly raises them. *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction."); *Blood*, 2022 WL 11745549, at *2–3 (deciding standing as an element of subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss). Recall the court's obligation on review of a Rule 12(b)(1) motion: facial attacks require review of only the complaint and factual attacks open the door to matters outside the complaint. *Holt*, 46 F.3d at 1002–03; *see above* § II.A.

Here, defendants don't specify whether their standing challenge is facial or factual, but the court construes the challenge as a facial one. In their Motion to Dismiss, defendants challenge Mr. Burch's standing to sue, largely because he has "not alleged any of these things are likely to occur again in the future." *See* Doc. 40 at 22. But defendants also specifically challenge Mr. Burch's standing to seek a declaratory judgment concluding that civil confinement based entirely on past criminal offenses is unconstitutional. This challenge is based on the sufficiency of Mr. Burch's pleading, but also because defendants find it "suspect at best" that Mr. Burch ever was confined solely because of his past criminal offenses.[7] *Id.* at 23–24.

---

[7]       Defendants reference an annual examination report of Mr. Burch's mental condition in 2021 and the state district court's findings that Mr. Burch needed to improve his emotional regulation, hostility toward staff, and mental abnormality or personality disorder before qualifying for transitional release. Doc. 40 at 23–24. Mr. Burch uses different language in his Amended Complaint to refer to the same facts defendants reference. He pleads that Judge Alvey held a hearing for his 2021 annual review and found that Mr. Burch needed to "remain confined for: (1) His treatment of others; (2) He has not completed the program; (3) Disrespect of the rules; and (4) Having a wall that impedes progression in the program." Doc. 20 at 5 (Am. Compl. ¶ C.9.d.). So, the parties essentially identify the same facts as forming the basis for Mr. Burch's continued confinement.

Because the facts defendants refer to in challenging standing on this point are similarly pleaded in Mr. Burch's Complaint, and the parties don't disagree about those facts serving as the stated reason for Mr. Burch's continued confinement, the court construes defendants' standing challenge as a facial attack.[8]  So, the court takes the allegations in Mr. Burch's Complaint as true and considers those allegations when determining whether he met his burden to prove standing at the motion to dismiss stage.

But what about allegations Mr. Burch makes in response to defendants' motion?  A facial 12(b)(1) challenge proceeds under the "same standards" as a 12(b)(6) motion to dismiss. *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).  And, on a 12(b)(6) motion to dismiss, this court previously has considered the allegations in a pro se plaintiff's response that are consistent with the allegations in an amended complaint.  *See Peoples v. Wichita State Univ.*, No. 18-1010-JWB, 2018 WL 5013488, at *2 (D. Kan. Oct. 16, 2018) (considering factual allegations in plaintiff's response to a motion to dismiss because plaintiff proceeded pro se, allegations were consistent with his allegations in the amended complaint, and the Fed. R. Civ. P. 15(a) pleading standard would likely enable plaintiff to amend his complaint); *see also Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (noting it "might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss[,]" so long as those facts and theories are consistent with those pleaded in the complaint).  *But see Pegues v. Baker Univ.*, No. 11-2136-KHV, 2011 WL

---

[8]      The court also needn't convert this Rule 12(b)(1) motion to dismiss to a 12(b)(6) motion to dismiss or one seeking summary judgment.  Resolution of the jurisdictional question here—whether Mr. Burch sufficiently pleaded his standing to seek prospective relief—doesn't require the court to resolve any of Mr. Burch's substantive claims.  Mr. Burch challenges the constitutionality of the KSVPA.  Doc. 20 at 3 (Am. Compl. ¶ B.1.).  To determine his standing to do so, the court needn't decide whether the KSVPA is constitutional, but only whether Mr. Burch has sufficiently pleaded the requirements of standing.  So, the jurisdictional question isn't "intertwined with the merits" of Mr. Burch's case.  *Holt*, 46 F.3d at 1003.

4436613, at *2 n.2 (D. Kan. Sept. 23, 2011) (refusing to consider facts relied on in response to 12(b)(6) motion to dismiss that weren't alleged in pro se plaintiff's complaint). But remember, this is a 12(b)(1) motion. The court's research didn't reveal any guidance from our court or the Tenth Circuit on this point for 12(b)(1) motions. Given the similar treatment of facial 12(b)(1) challenges and 12(b)(6) challenges, our court's consideration of consistent information alleged in a pro se plaintiff's response to a 12(b)(6) motion to dismiss, and the likely ability of Mr. Burch to amend his Complaint again under Rule 15(a),[9] the court considers his Amended Complaint and consistent information alleged in his response to defendants' motion.

### 2.    Standing Doctrine

Now, a review of standing jurisprudence. Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To present a case or controversy under Article III, a plaintiff must establish that he has standing to sue. *Id.* Article III standing requires the plaintiff to demonstrate: (1) an injury in fact to a legally protected interest; (2) a causal connection, meaning the injury is fairly traceable to the challenged act of the defendant; and (3) that the injury is likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted).

At "the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). But general factual allegations are sufficient to carry

---

[9]    A party can amend their pleadings a second time with consent of the opposing party or the court's leave. Fed. R. Civ. P. 15(a)(2). The court "should freely give leave when justice so requires." *Id.* And, ordinarily, a court will dismiss a pro se litigant's complaint without prejudice if deficiencies are "attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements[.]" *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). So, Mr. Burch, as a pro se litigant, likely could amend his pleading again.

plaintiff's burden of establishing those elements because the court must "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

### 3.    Injury in Fact

To establish the injury in fact requirement, a "plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). On claims seeking prospective relief, the plaintiff must show a continuing injury. *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002); *Hooper v. City of Tulsa*, 71 F.4th 1270, 1277 (10th Cir. 2023) ("Because Mr. Hooper's declaratory judgment claim seeks prospective relief, he must demonstrate a continuing injury." (quotation cleaned up)). If a plaintiff claims he has sustained constitutional injury in the past, he can maintain a declaratory or injunctive action if he is able to "demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

The seminal case on standing for prospective relief is *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). There, the Court found a plaintiff lacked standing to request prospective relief when challenging a police department's use of chokeholds. *Id.* at 105–07. According to *Lyons*, to establish an injury in fact, the plaintiff would have to allege two things: *First*, that he would have another encounter with police and, *second*, that either all police officers in the department always used chokeholds or the city ordered or authorized the procedure. *Id.* at 105–06. Essentially, the plaintiff would have to allege that "he was likely to suffer future injury" as a result of the policy or practice. *Id.* "Past exposure to illegal conduct does not in itself show a

present case or controversy" but "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A key consideration in assessing likelihood of future injury is whether the plaintiff challenges a statute or policy as unconstitutional. *See id.* at 496.

The court applies *Lyons*'s two-prong requirements to Mr. Burch's many claims to assess whether he has alleged an injury in fact sufficient to satisfy the standing requirements. Many of Mr. Burch's claims suffer similar deficiencies in the injury in fact analysis. In the interest of efficiency, the court groups Mr. Burch's claims by respective deficiency, if there is one. And the court finishes with those claims for which Mr. Burch sufficiently pleaded an injury in fact.

    a. No Alleged Past or Future Injury – Amended Complaint ¶¶ E.1.C, G, H, I, K, L, N, P, Q (in part). Doc. 20 at 13–16.

    b. No Alleged Policy or Practice Authorizing the Conduct – Amended Complaint ¶¶ E.1.E, F, J (in part). *Id.* at 14.

    c. Sufficiently Pleaded an Injury in Fact – Amended Complaint ¶¶ E.1.A, B, D (in part), J (in part), M, O, and Q (in part). *Id.* at 13–16.

### a.    No Alleged Past or Future Injury

Mr. Burch lacks standing on some of his requests for relief because he has failed to plead a past—much less a likely future—injury resulting from the policies he challenges. Past injury alone is insufficient to establish an injury in fact for prospective relief. *O'Shea*, 414 U.S. at 495–96. On the claims addressed in this subsection, Mr. Burch fails to allege even a past injury. And while an injury in fact can exist even absent a past injury, one must be "certainly impending." *See Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1282 (10th Cir. 2002) (internal quotation marks and citation omitted). Mr. Burch hasn't convinced the court that the following

claims rest on a "certainly impending" injury either.  So, for these requests for relief, Mr. Burch

hasn't alleged sufficiently an injury in fact—past or impending.  And, therefore, he lacks

standing to assert these claims.  *See* Doc. 20 at 13–16 (Am. Compl. ¶¶ E.1.C, G, H, I, K, L, N, P,

Q (in part)).  The court explains this deficiency for each claim it applies to, below.

### i.      Civil Confinement Based Solely on Past Criminal Offenses (Request for Relief I)

Mr. Burch challenges an alleged Kansas practice of civilly confining individuals based

solely on past criminal offenses.  Doc. 20 at 14 (Am. Compl. ¶ E.1.I.).  But Mr. Burch has failed

to show that he was harmed in the past by a practice like this.  He pleaded that Judge Alvey, for

his 2021 annual review hearing, held that he "needs to remain confined for:  (1) His treatment of

others; (2) He has not completed the program; (3) Disrespect of the rules; and (4) Having a wall

that impedes progression in the program."  *Id.* at 5 (Am. Compl. ¶ C.9.d.).  Based on his

Amended Complaint, he wasn't confined in the past solely based on previous criminal offenses.

And he hasn't alleged he is likely to sustain injury in this fashion in the future.  So, he hasn't

alleged sufficiently an injury in fact on this claim.

### ii.     Confinement Absent Mental Abnormality or Personality Disorder (Requests for Relief C, G, H, N, & P)

Mr. Burch also requests a declaration that Kansas doesn't measure the degree of a civilly

committed person's dangerousness or change in their mental abnormality or personality disorder,

or that confinement without evidence of "a lack of control by a mental abnormality or

personality disorder" is unconstitutional.  *See id.* at 13–15 (Am. Compl. ¶ E.1.C., G., H., N., P.).

Mr. Burch asks the court to declare that Kansas's alleged failure to measure the degree of a

civilly committed person's dangerousness is unconstitutional but hasn't pleaded any facts

suggesting that this is a practice that has harmed him in the past—or that is likely to do so in the

future.  In fact, he pleads the opposite.  Mr. Burch acknowledges multiple times that the Kansas courts move confined individuals to different stages of the release process based on findings that they are "no longer a danger due to a mental abnormality or personality disorder[.]"  *See, e.g.*, Doc. 20 at 7.  So, Mr. Burch has failed to allege a past or future injury and thus lacks standing for this claim, too.

### iii.    Conditional Release Program (Request for Relief Q)

The court next addresses Mr. Burch's standing for two of his requests about conditional release.  He asks the court to declare that denial of discharge at an annual review violates the Fourteenth Amendment and that "Conditional Release is a pattern . . . of prevalent parole . . . that can be restarted at the whim of the State of Kansas, even if Mr. Burch no longer suffers from a mental abnormality or personality disorder that would cause him to be a danger[.]"  Doc. 20 at 15–16 (Am. Compl. ¶¶ E.1.O., Q.).  Mr. Burch argues in his response to defendants' motion that his challenge to the conditional release program is threefold:  (1) it is unconstitutional to deny a securely confined individual the ability to seek conditional release at annual review hearings, (2) it is unconstitutional to require five years on conditional release no matter one's mental condition, and (3) it is unconstitutional to re-confine individuals from conditional release because of mere rule violations.  Doc. 46 at 20–21.  The court addresses the second and third of those three claims here.[10]

Mr. Burch pleads facts about Kansas's five-year period of conditional release before final discharge, *see* Doc. 20 at 7–8, 9, 10, and its practice of re-confining individuals based on rule violations during conditional release, *id.* at 7–8.  But Mr. Burch has failed to plead that it is likely

---

[10]    Mr. Burch's first conditional release-related claim in Request for Relief E.1.Q is addressed in a section below, because the court concludes Mr. Burch sufficiently has alleged an injury in fact for that first claim.  *See below* § III.A.3.c.iv.

either practice will injure him imminently.  Because Mr. Burch hasn't qualified yet for

conditional release, he has no past, continuing, or imminent future injury on these points.

What's more, a declaration about the constitutionality of these practices wouldn't impact Mr.

Burch at present or in the immediate future.[11]  So, Mr. Burch hasn't pleaded an injury in fact.  To

the extent that Mr. Burch's Request for Relief (1)(Q) challenges the conditional release

program's five-year period before final discharge and the practice of re-commitment based on

rule violations during conditional release, he lacks standing for those claims.

### iv.   Annual Review Rights Aligned with Rights of Criminal Defendants and Inmates (Requests for Relief K & L)

Mr. Burch also lacks standing to ask the court to declare that civilly confined individuals

under the KSVPA are entitled to the same rights a "criminal has during a criminal proceeding"

and an "inmate has during his period of incarceration and parole or post-release" supervision.

Doc. 20 at 15 (Am. Compl. ¶¶ E.1.K., L.).  Beyond failing to identify what rights he's pleading,

Mr. Burch fails to allege any facts supporting his claims and showing that he has sustained a past

injury or is likely to sustain a future injury.  *See generally id.*  The court isn't Mr. Burch's

advocate, and Mr. Burch's purported injury is unclear.  So, the court concludes he lacks standing

for this challenge.  *Hall*, 935 F.2d at 1110 (recognizing that the court can't serve as a pro se

litigant's advocate); *Heath v. Bd. of Cnty. Comm'rs of Boulder Cnty.*, 92 F. App'x 667, 672 (10th

Cir. 2004) ("To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of standing,

---

[11]     On this front, the court agrees with defendants' ripeness argument.  *See* Doc. 40 at 20–21.
Ripeness evaluates (1) the fitness of the issue for judicial resolution and (2) the hardship to the parties if
judicial review is withheld.  *Skull Valley*, 376 F.3d at 1237.  If the "matter involves uncertain events
which may not happen at all," the issue may not be fit for judicial resolution.  *Id.*  Mr. Burch hasn't been
considered for conditional release yet, so determining "the constitutionality of conditional release will
have no immediate impact on Mr. Burch[.]"  Doc. 40 at 21; *see also United States v. Combe*, 437 F.
App'x 644, 646 (10th Cir. 2011) (finding an issue related to the start date of supervised release wasn't
ripe because the legal issue turned on whether the individual would be released at all).  Likewise, here,
these two aspects of Mr. Burch's claims about the conditional release program aren't ripe.

therefore, it is not enough to sufficiently allege constitutional error . . . ; a plaintiff must also sufficiently allege injury suffered as a consequence of the error."); *Phelps v. Hamilton*, 122 F.3d 1309, 1316 (10th Cir. 1997) ("In order to satisfy the jurisdictional prerequisite of standing, the plaintiff must do more than allege abstract injury[.]").

> **b.     No Alleged Policy or Practice Authorizing the Conduct**

For several of his requests for relief, Mr. Burch fails to allege sufficiently an injury in fact.  He doesn't challenge an authorized policy or otherwise show that his alleged harms are likely to happen again.  The court explains how this deficiency manifests itself in specific claims, below.

> **i.     Denial of Discharge Based Solely on a State Report &
> Without Discovery (Requests for Relief E & F)**

Mr. Burch asks the court to declare that basing denial of discharge solely on a state report and denying a civilly committed person the ability to gather evidence for an annual review are unconstitutional.  Doc. 20 at 14 (Am. Compl. ¶ E.1.E., F.).  Mr. Burch alleges, in essence, that the state's report provided the sole basis for denying his discharge at the 2021 annual review hearing.[12]  But he fails to allege that declaratory relief is necessary to prevent the same thing from happening again.  He never identifies a policy or practice that suggests the state report would function in that fashion in the future.  Mr. Burch also doesn't plead that he intends to ask to gather evidence for future probable cause hearings.  Nor does he plead that the statute prohibits discovery or even permits a judge to deny discovery before a probable cause hearing. *Cf. Shaw v. Jones*, No. 19-1343-KHV, 2020 WL 2101298, at *8 (D. Kan. May 1, 2020)

---

[12]     Mr. Burch alleged that he was denied an independent examiner, discovery, and the ability to present evidence for himself at the 2021 annual review.  *See* Doc. 20 at 4–5 (Am. Compl. ¶¶ C.2.5.–7.). Given Mr. Burch's pro se status, and taking these facts as true—as the court must—it appears that all that was left for review at the Wyandotte County, Kansas District Court was the state's report.

(distinguishing *Lyons* and finding injury in fact in part because plaintiff had shown an allegedly unconstitutional practice mandated by the Kansas Highway Patrol).  He only cites the decision made by Judge Alvey at his 2021 annual review hearing, but alleges nothing more.

Instead, for all his claims, he summarily argues that his injuries are "alleged to be a recurrent theme for any and all future annual reviews that have not occurred[.]"[13]  Doc. 46 at 19. But Mr. Burch asks the court to go a step too far.  He failed to make this allegation in his Amended Complaint.  What's more, he tries to satisfy his burden on standing—in his response— with sweeping language that fails to identify the specific injuries likely to recur.  *Cf. Auman v. Kansas*, No. 17-2069-DDC-JPO, 2018 WL 587232, at *6 (D. Kan. Jan. 29, 2018) (finding plaintiff hadn't pleaded an injury in fact when simply alleging injunctive relief was necessary to prevent certain constitutional violations from "ever happening again").  Article III demands that the plaintiff establish an injury for each type of relief sought by each claim.  *See Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007).  And once again, the court can't construct legal arguments for Mr. Burch or supply facts to develop his claims.  *See Hall*, 935 F.2d at 1110; *Whitney*, 113 F.3d at 1173–74 (refusing to supply additional factual allegations to "round out" a pro se plaintiff's complaint).  So, the court concludes, he lacks standing to challenge the state's report as the sole basis for denying discharge and his claim that denying discovery is unconstitutional.

---

[13]      Mr. Burch makes this statement as part of a generalized standing argument, without specifying which request for relief it purportedly supports.  He simply writes, "In order to show standing Mr. Burch used the 2021 Annual Review facts to show an injury in the past.  Such injury is alleged to be a recurrent theme for any and all future annual reviews[.]"  Doc. 46 at 19.  Without more, the court can't construe this statement as sufficiently alleging the likelihood of future injury for all of Mr. Burch's claims.

ii.    **Confinement Based on Issues with Staff (Request for Relief J)**

The court concludes that Mr. Burch hasn't alleged an injury in fact for his claims that confinement is unconstitutional if the decision is based on having issues with staff.  *See* Doc. 20 at 14 (Am. Compl. ¶ E.1.J.).  He alleged that he was recommitted in 2021, in part, because of his "treatment of others" and "[d]isrespect of the rules[.]"  *Id.* at 5 (Am. Compl. ¶ C.2.9.d.).  Mr. Burch also references Judge Alvey's holdings following the 2021 Annual Review.  *Id.* at 5 (Am. Compl. ¶ C.2.9.).  In that proceeding, Judge Alvey found that Mr. Burch's "hostility toward staff" contributed to the determination that he didn't need an examiner in 2021 and that he had a "wall that impedes progression in the program that has to do with hostility[.]"  *In re Burch*, No. 2001-PR-000412, at 1; Doc. 40-2 at 3.  So, Mr. Burch has alleged a past injury.  But he fails to allege a state policy mandating or authorizing confinement based on issues with staff.[14]  *See O'Shea*, 414 U.S. at 496 (finding important to likelihood of future injury analysis that plaintiff failed to allege a statute was unconstitutional or that Illinois would charge him improperly in the future).  Mr. Burch also doesn't allege that recommitment based on issues with staff is likely to occur in the future.  *See generally* Doc. 20.  Without more, the court concludes Mr. Burch hasn't shown a sufficient likelihood of an identical decision at future annual review hearings.  So, again, he hasn't alleged an injury in fact sufficiently.

---

[14]    Mr. Burch alleges that a "rule violation" could include "anything the supervising officer or person does not like that Mr. Burch does."  Doc. 20 at 8 (Am. Compl. ¶ C.2.14.e.).  But Mr. Burch connects this allegation to recommitment from the transitional or conditional release program.  *Id.* at 7–8 (Am. Compl. ¶¶ C.2.14.).  And Mr. Burch isn't on transitional or conditional release at this time.  *Id.* at 5 (Am. Compl. ¶ C.2.9.) (reviewing Judge Alvey's decision that "Mr. Burch needs to remain confined").  So, this allegation doesn't change the court's analysis on Mr. Burch's request for a declaration that confinement based on issues with staff is unconstitutional.

### c.     Sufficiently Alleged Injury in Fact

Despite difficulty alleging an injury in fact for many of his requests for relief, Mr. Burch

sufficiently alleges an injury in fact for several others.  Our Circuit's decision in *Hooper v.*

*Tulsa*, 71 F.4th 1270, provides an instructive example of sufficiently alleged injuries for

prospective relief.  Plaintiff there asked the court to declare that Tulsa couldn't exercise

jurisdiction over him as a Native American living on a reservation.  *Id.* at 1274.  Though

plaintiff's complaint included "only minimal allegations relating to injury," plaintiff met his

burden at the pleading stage.  *Id.* at 1277.  He had alleged that he was a native living in Tulsa and

that the city wrongfully was exercising jurisdiction over him based on a flawed interpretation of

a statute.  *Id.*  He referenced Tulsa's past exercise of jurisdiction over him and a Tulsa municipal

court's determination that it could continue to exercise jurisdiction over natives.  *Id.*  Finally, he

alleged a declaratory judgment was necessary to avoid ongoing wrongful conduct by the City.

*Id.*  Because of these allegations, the court presumed that "Mr. Hooper reasonably fears Tulsa

will continue to wrongfully exercise jurisdiction over him[.]"  *Id.*  Similarly here, Mr. Burch

supports several of his claims by alleging past injuries, unconstitutional KSVPA policies, and, at

bottom, the likelihood of future injuries as a result.

### i.     Annual Review Hearings Held Without the Securely Confined Party Present (Request for Relief (Request for Relief D)

Mr. Burch challenges purportedly unconstitutional policies under the KSVPA.  Many of

these claims are supported by allegations that the State of Kansas authorized the allegedly

unconstitutional procedures.  For example, Mr. Burch alleges that the state has a policy of

holding annual review hearings without the confined individual present.  Doc. 20 at 6–7 (Am.

Compl. ¶ C.2.13.) (alleging the state, through its statutes, has "declared that even though the

burden is on Mr. Burch, the hearing is to be held *in absentia* of Mr. Burch").  He asks for a

declaration that this procedure is unconstitutional. *Id.* at 14 (Am. Compl. ¶ E.1.D.). In response to defendants' motion, Mr. Burch alleges a kerfuffle about his unauthorized presence at a 2017 hearing; the Kansas statute indicating that a civilly committed person doesn't have an entitlement to appear at the hearing; and assorted events during 2018, 2019, 2020, 2021, and 2022. Doc. 46 at 11–12. These allegations, Mr. Burch contends, provide more evidence of the likelihood of injury in the future. *Id.* These facts don't conflict with, and in fact, "amplify[,]" the information pleaded in his complaint. *See Peoples*, 2018 WL 5013488, at *2. And, he says "this will continue to occur and is an injury to be expected, without Court intervention." Doc. 46 at 12; *see Hooper*, 71 F.4th at 1277 (presuming that plaintiff "reasonably fear[ed]" ongoing wrongful conduct by defendant because plaintiff alleged the necessity of a declaratory judgment to prevent the alleged harm from happening again, a past injury, and a state policy permitting the wrongful conduct).[15] So, Mr. Burch sufficiently has alleged his likelihood of future injury for his claims about annual review probable cause hearings being held in his absence.[16]

---

[15]    Defendants argue in their Reply that Mr. Burch lacks standing for this claim because he was present for his 2023 annual review hearing. Doc. 49 at 4. But, as defendants note, the KSVPA allows the state district court to conduct the hearings in Mr. Burch's absence. *Id.* (citing Kan. Stat. Ann. § 59-29a08). And Mr. Burch has alleged past injury because he was precluded from attending his annual review hearings in the past. He has alleged that he is likely to be injured in the same way in the future. And, at bottom, defendants reach the end of this claim by a different means. To preview: the court concludes Mr. Burch is collaterally estopped from relitigating this issue. *See below* § III.D.

[16]    To the extent this request for relief challenges conducting an *evidentiary* annual review hearing in absentia of the sexually violent predator, Mr. Burch hasn't alleged an injury in fact. *See* Doc. 20 at 14 (Am. Compl. ¶ E.1.D.). Mr. Burch hasn't shown that a state court judge denied him access to an evidentiary annual review hearing in the past. What's more, he generally references Kan. Stat. Ann. § 59-29a08, which specifies that sexually violent predators have a right to attend such a hearing. *See id.* at 3 (Am. Compl. ¶ B.1.); Kan. Stat. Ann. § 59-29a08(g). So, having failed to allege a past injury or an unconstitutional policy authorizing the conduct, Mr. Burch hasn't pleaded an injury in fact resulting from in absentia evidentiary annual review hearings.

ii.  **Denial of an Expert Witness at Annual Review Hearings (Request for Relief A)**

Mr. Burch also has alleged an injury sufficiently—at this stage, at least—to challenge the denial of an expert witness for use at a future annual review proceeding.  Doc. 20 at 13 (Am. Compl. ¶ E.1.A.).  Defendants argue that he hasn't alleged denial of an expert witness is likely to occur again in the future.  *See* Doc. 40 at 23.  Mr. Burch tries to respond.  He explains that he "has been committed for twenty years and has had no less than nineteen annual reviews."  Doc. 46 at 10.  And, he contends, "defendant's position is that the statute makes this a discretionary act[.]"  *Id.*[17]  He asserts the conclusion that "more likely than not Mr. Burch will not be allowed an independent examiner." [18]  *Id.*  Like the *Hooper* court, this court takes Mr. Burch's allegations to encompass his "reasonabl[e] fears" that Kansas will continue wrongfully denying him an expert witness at an annual review hearing.  *See Hooper*, 71 F.4th at 1277 (finding important to injury in fact analysis that plaintiff had alleged a municipal court authorized the wrongful conduct, he was injured in the past, and declaratory relief was necessary to prevent further harm).  So, plaintiff alleged an injury in fact here, too.

---

[17]      Mr. Burch admits that there is a "lack of a factual record to determine if it will be an ongoing injury or one that will more likely than not occur again."  Doc. 46 at 11.  But Mr. Burch doesn't have to develop these facts at this stage.  He merely must plead them.

[18]      Mr. Burch claims that the state's procedures violate—in some capacity— his "Right to Access the Court under the First Amendment[.]"  Doc. 20 at 3 (Am. Compl. ¶ C.1.B.).  He is correct that the "right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."  *Collins v. Daniels*, 916 F.3d 1302, 1323 (10th Cir. 2019).  But Mr. Burch never develops how he thinks his First Amendment rights were violated.  And he doesn't mention the First Amendment in his requests for relief.  Mr. Burch never alleges a legal claim that he will seek to litigate in the future.  Nor does he allege that defendants will hinder his efforts to access the courts in the future.  The court can't construct legal arguments for Mr. Burch or supply facts to develop his claims.  *See Hall*, 935 F.2d at 1110; *Whitney*, 113 F.3d at 1173–74.  So, Mr. Burch lacks standing for his vague First Amendment argument.

### iii.   Denying Discharge Based on Failure to Participate in Treatment (Requests for Relief B, J, & M)

Defendants next argue Mr. Burch lacks standing to challenge Kansas's alleged practice of denying discharge based on one's failure to participate in an unstudied treatment program. Doc. 40 at 22; *see* Doc. 20 at 13–15 (Am. Compl. ¶¶ E.1.B., J., M.). But Mr. Burch alleged that Kansas has "declared the policy" to "confine Mr. Burch because he has not fully attended the alleged treatment program[.]" Doc. 20 at 6 (Am. Compl. ¶ C.2.11.). He alleges that he was recommitted in 2021 because he "has not completed the program[.]" *Id.* at 5 (Am. Compl. ¶ C.2.9.d.). And he alleges the imminence of the injury in the future. He explains that it will take him a minimum of two years to complete the program. Doc. 46 at 12. And he contends that this injury "will continue to occur without intervention" at another annual review. *Id.* at 13; *see Hooper*, 71 F.4th at 1277 (including in injury in fact analysis that plaintiff had alleged necessity of declaratory judgment to prevent ongoing wrongful behavior). So, Mr. Burch has alleged an injury in fact sufficient to challenge Kansas's alleged practice of denying discharge based on failure to participate in the treatment program.[19]

### iv.   Inability to Request Discharge at Annual Review (Requests for Relief O & Q)

As part of his Request for Relief E.1.Q., Mr. Burch challenges his inability "to seek [conditional release] at an annual review hearing[.]" Doc. 46 at 20. Mr. Burch pleaded that the state of Kansas has "abide[d] by and enforce[d] the fact that Mr. Burch is not eligible for

---

[19]    Defendants argue that Mr. Burch—to the extent he challenges the adequacy of the state's treatment program—lacks standing. Doc. 40 at 21. They assert that he failed to participate in the treatment program. *Id.* Mr. Burch asks the court to declare that confinement based on not completing a program "that has not been empirically studied or proven" is unconstitutional. Doc. 20 at 13 (Am. Compl. ¶ E.1.B.). But Mr. Burch hasn't pleaded that the program is inadequate or that it is unstudied. To the extent defendants interpret Mr. Burch as challenging the adequacy of his treatment, the court finds Mr. Burch hasn't alleged an injury in fact and thus lacks standing.

discharge during an annual review period unless he completed Secure Confinement, Transitional release, and has had five years without a rule violation on Conditional release." Doc. 20 at 9 (Am. Compl. ¶ C.2.18.). Mr. Burch invokes Kan. Stat. Ann. § 59-29a08(b) to support this point in his Response. Doc. 46 at 21. This assertion supports his Request for Relief (1)(O), where he asks for a declaration that denying "discharge during an annual review subjects Mr. Burch to an unlawful restraint" under the Fourteenth Amendment. Doc. 20 at 15 (Am. Compl. ¶ E.1.O.). He contends that if the defendants argue that "they, the Judge, or the State would willingly or knowingly ignore their own law" that such an argument presents a strictly "hypothetical situation." *Id.* And Mr. Burch repeatedly pleads information about the *annual* review process. *See, e.g.*, Doc. 20 at 7 (Am. Compl. ¶ C.2.14.). So, he has pleaded that he isn't eligible to petition for discharge under an ongoing state policy. *See Shaw*, 2020 WL 2101298, at *8 (finding injury in fact where plaintiffs alleged Kansas "authorize[d] the practice" and "expressly instruct[ed] its troopers . . . to apply it"). And this is sufficient to allege an injury in fact under the *Hooper* rationale. Recall that in *Hooper*, the Circuit found an injury in fact for prospective relief where plaintiff alleged a past violation; a state court determined that it could continue committing the alleged violation; and declaratory relief was necessary to prevent continued violations. *Hooper*, 71 F.4th at 1277. Here, as in *Hooper*, the alleged unconstitutionality of the statute prohibiting petition for discharge provides a sufficient injury in fact allegation.

Here's the final standing scoreboard. Mr. Burch lacks standing to raise his Requests for Relief (1)I, I, (F), (G), (H), (I), (K), (L), (N), and (P), in their entirety because he has failed to allege an injury in fact. For Request for Relief (1)(D), he lacks standing to the extent he challenges denied access to annual review evidentiary hearings. For Request for Relief (1)(J), he lacks standing to the extent he claims confinement is unconstitutional if the decision is based on

having issues with staff.  For Request for Relief (1)(Q), he lacks standing to the extent he claims the conditional release program's five-year period before final discharge and the practice of re-commitment based on rule violations are unconstitutional.

But Mr. Burch sufficiently has alleged an injury in fact on the following claims: Requests for Relief (1)(A), (B), (M), and (O).  For Request for Relief (1)(D), he alleged an injury in fact to the extent he challenges denied access to annual review probable cause hearings.  For Request for Relief (1)(J), he alleged an injury in fact to the extent he claims confinement is unconstitutional on the basis of not completing the program.  For Request for Relief (1)(Q), he alleged an injury in fact to the extent he challenged his ability to request final discharge.

Defendants didn't challenge Mr. Burch's standing on causation or redressability grounds. *See generally* Doc. 40.  But the court has an independent obligation to satisfy itself of standing under Article III.  *Qwest Commc'ns Int'l Inc. v. FCC*, 240 F.3d 886, 891 (10th Cir. 2001).  So, the court briefly addresses, next, the standing elements of causation and redressability for the remaining claims.

### 4.    Causation

To satisfy the causation element of standing, a plaintiff's injury must be "'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (quoting *Lujan*, 504 U.S. at 560).  That is, Article III requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact."  *Id.*  Plaintiff must demonstrate causation by more than "speculative inferences[.]"  *Id.* at 1157 (internal quotation marks omitted).  And "the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials

responsible for the enforcement of that statute." *Petrella v. Brownback*, 697 F.3d 1285, 1294 (10th Cir. 2012) (finding plaintiff had established causation element of standing to sue Governor and Attorney General of Kansas in a challenge to Kansas's school district financing act); *Bishop v. Oklahoma*, 333 F. App'x 361, 365 (10th Cir. 2009) (finding "generalized duty to enforce state law" is alone insufficient in the standing inquiry, and citing cases requiring a "specific duty to enforce" the challenged statutes).

Mr. Burch challenges Kansas's policies under the KSVPA. *See* Doc. 20 at 3 (Am. Compl. ¶ B.1.). He sues the Attorney General and the Secretary of the Kansas Department on Aging and Disability Services.[20] *Id.* at 1–2 (Am. Compl. ¶¶ A.2., 3.). The Attorney General is responsible for defending the state in all civil proceedings when the state is an interested party or the constitutionality of the state's laws is at issue. Kan. Stat. Ann. § 75-702(b); *see also Petrella*, 697 F.3d at 1293–94. And the Attorney General is involved in the annual review and transitional release process—enforcement of the specific statute at issue. *See* Kan. Stat. Ann. § 59-29a08 (stipulating that court forwards copy of annual review report to attorney general before annual review hearing and that attorney general represents state in the later hearing after probable cause is established); *Bishop*, 333 F. App'x at 365 (assessing extent to which claims are connected to duties of Attorney General). Specifically, Mr. Burch alleges that the Attorney General "was acting in accords with the laws that Kansas has created." Doc. 20 at 1 (Am. Compl. ¶ A.2.). He also invokes the relevant statute, Kan. Stat. Ann. § 59-29a08. *Id.* at 3 (Am. Compl. ¶ B.1.). So, Mr. Burch has sufficiently alleged his injuries are fairly traceable to the Attorney General.

---

[20]    As the court will address in detail below, Judge Alvey isn't a proper party to this suit. *See below* § III.C. So, the court doesn't consider whether Mr. Burch's alleged injuries are fairly traceable to Judge Alvey's conduct.

Similarly, Mr. Burch alleges his injuries are fairly traceable to Secretary Howard's actions enforcing the KSVPA.  Individuals committed under the KSVPA are in the Secretary's custody.  Kan. Stat. Ann. § 59-29a22.  Again, Mr. Burch alleges that "Mrs. Howard was acting in accords with the laws that Kansas has created."  Doc. 20 at 2 (Am. Compl. ¶ A.3.).  And again, he invoked the relevant statute, which establishes the Secretary's duty to provide civilly committed persons annual notice of their rights to petition for release.  *Id.* at 3 (Am. Compl. ¶ B.1.); Kan. Stat. Ann. § 59-29a08; *see also Petrella*, 697 F.3d at 1294 (finding action against state officials responsible for enforcing relevant statute appropriate when plaintiff seeks prospective relief).  Mr. Burch challenges the KSVPA and alleges that his injuries flow from its unconstitutionality.  *See Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 451 (10th Cir. 1996) ("To establish causation, a plaintiff need only show its increased risk is fairly traceable to the agency's failure to comply [with the law].").  So, Mr. Burch has satisfied the causation aspect for standing on his claims against Secretary Howard, too.

### 5.    Redressability

Standing also "requires a likelihood that the injury-in-fact will be redressed by a favorable decision."  *Bronson*, 500 F.3d at 1111.  A "plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury."  *Gandy*, 416 F.3d at 1158.  Mr. Burch's sufficiently pleaded injuries stem from the state:  (1) denying sexually violent predators expert witnesses at annual review hearings (Request for Relief (1)(A)); (2) continuing confinement based on one's noncompletion of the program (Requests for Relief (1)(B), (J), (M)); (3) holding annual review probable cause hearings in the sexually violent predator's absence (Request for Relief (1)(D)); and (4) denying discharge during annual reviews (Requests for Relief (1)(O) and (Q)).

What makes a declaratory judgment "a proper judicial resolution of a 'case or controversy' . . . [is] the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*" *Id.* at 1159 (emphasis added) (quoting *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*). For Mr. Burch, declaratory and injunctive relief in his favor would demand defendants—as enforcers of the KSVPA—treat him according to the court's order in future annual review hearings. Mr. Burch seeks "a determination of what his Constitutional rights are during an annual review while civilly committed" and "declaratory and then injunctive relief to enforce" those rights. Doc. 20 at 3 (Am. Compl. ¶ B.1.). So, a favorable decision would redress Mr. Burch's injuries stemming from Kansas's allegedly unconstitutional KSVPA procedures.

In sum, Mr. Burch has established standing at this early stage for Requests for Relief (A), (B), (D) in part, (J) in part, (M), (O), and (Q) in part.

### B.   *Kansas v. Hendricks*

Defendants argue that Mr. Burch's request for relief seeking a declaration that the KSVPA violates the Ex Post Facto and Double Jeopardy clauses fails because the Supreme Court already determined that the KSVPA doesn't violate those provisions. Doc. 40 at 4 (citing *Kansas v. Hendricks*, 521 U.S. 346, 369 (1997)). [21]  In response, Mr. Burch argues that the court shouldn't apply *Hendricks* because it wasn't premised on identical facts. Doc. 46 at 4.  And, he

---

[21]      Specifically, Mr. Burch seeks a declaration that "confinement based solely on . . . past criminal offenses is a violation of the . . . Constitution's clauses concerning *Ex Post Facto, Double Jeopardy, and Due Process.*" Doc. 20 at 14 (Am. Compl. ¶ E.1.I.) (emphasis in original).  Though defendants don't challenge this request for relief on due process grounds, the court notes again that Mr. Burch's own pleading negates the idea that the KSVPA confines people based on past criminal offenses alone. *See above* § III.A.3.a.i.  What's more, the *Hendricks* court held that the KSVPA's mental abnormality requirement for civil confinement satisfies substantive due process. *Hendricks*, 521 U.S. at 356.

says, because the legislature has amended the KSVPA since *Hendricks*, this court shouldn't follow its conclusions. *Id.* at 7–9. Defendants have the better of this argument.

The Ex Post Facto and Double Jeopardy clauses apply just to criminal punishment. *Hendricks*, 521 U.S. at 369 ("Our conclusion that the Act is nonpunitive thus removes an essential prerequisite for both Hendricks' double jeopardy and ex post facto claims." (emphasis omitted)). For claims under the Ex Post Facto clause, "the controlling inquiry" is whether the law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Henderson v. Scott*, 260 F.3d 1213, 1216 (10th Cir. 2001) (internal quotation marks and citation omitted). Under the Double Jeopardy Clause, a state is prohibited from "punishing twice, or attempting a second time to punish criminally, for the same offense." *Hendricks*, 521 U.S. at 369 (internal quotation marks and citation omitted). And the Supreme Court concluded in *Hendricks* that the KSVPA is civil in nature and nonpunitive. *Id.* at 368–69.

The KSVPA amendments that Mr. Burch invokes don't change this determination. Although defendants simply conclude "involuntary confinement under the KSVPA is still not punitive"—without meaningfully engaging with Mr. Burch's argument—they are correct.[22] Doc. 49 at 2. While a "civil label is not always dispositive," the court only will reject this label where the challenging party provides "the clearest proof" that the statute is "so punitive either in purpose or effect as to negate [the State's] intention." *Id.* (quotation cleaned up). Mr. Burch

---

[22]  According to Mr. Burch, the KSVPA now provides—among other things—that just those in conditional release can petition for discharge, Doc. 20 at 10 (Am. Compl. ¶ B.2.25.), and that the State can place individuals back in confinement from the transitional release program if they violate any rule, Doc. 46 at 7. And, if the person isn't participating in treatment, he is presumptively unable to show probable cause, *id.*, and one must serve five years of conditional release before being eligible for full release, *id.*  While these changes aren't inconsequential, the KSVPA is still civil in nature. Kan. Stat. Ann. § 59-29a01(a); *Hendricks*, 521 U.S. at 361.

hasn't pleaded facts that would allow this court to reach a conclusion that the KSVPA has become penal in nature since *Hendricks* was decided in 1997.

Even with the changes to the KSVPA, the statute still doesn't implicate the retribution and deterrence objectives of punishment. *See id.* at 361–63; *see also* Kan. Stat. Ann. § 59-29a03, 29a08 (largely matching provisions that Supreme Court found salient in *Hendricks* in determining statutory scheme wasn't retributive or focused on deterring criminal behavior, but instead focused on protecting the public). Mr. Burch also doesn't allege that sexually violent predators are subjected to punitive conditions. *See Hendricks*, 521 U.S. at 363 ("[T]he mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." (quotation cleaned up)).

So, Mr. Burch has failed to state a plausible claim under the Ex Post Facto and Double Jeopardy clauses. *See Ingram v. Sebelius*, 2005 WL 327149, at *4 (D. Kan. Feb. 10, 2005) (granting motion to dismiss ex post facto claim because the challenged conduct wasn't punitive in nature).

### C.      Sovereign Immunity for Claims Against Judge Alvey

Next, the court addresses Judge Alvey's sovereign immunity argument. Judge Alvey presided over Mr. Burch's 2021 annual review and made the KSVPA findings that prompted Mr. Burch's lawsuit. *See* Doc. 20 at 5 (Am. Compl. ¶ C.2.9.). Defendants argue that Judge Alvey is entitled to sovereign immunity under the Eleventh Amendment, and alternatively, that there's no case or controversy between Mr. Burch and Judge Alvey.[23]  Doc. 40 at 24. So, in defendants' view, the court should dismiss all claims against Judge Alvey.

---

[23]      The court needn't address defendants' case-or-controversy argument because sovereign immunity resolves the issue.

Mr. Burch, for his part, urges the court to uphold what the Kansas Court of Appeals recognized in *In re Zishka*, 343 P.3d 558, 561 (Kan. Ct. App. 2015): "[A]ll parties involved in the process, including the district court, must make sure that the procedural rights of those who are involuntarily committed are fully respected." *See* Doc. 46 at 20. This appeal to the courts' duty to safeguard constitutional rights is prescient—but ultimately inconsequential. *In re Zishka* didn't address a suit against the district court judge tasked with applying the KSVPA, so it doesn't resolve the sovereign immunity issue. But a long history of Supreme Court precedent does. The court concludes sovereign immunity bars Mr. Burch's claims against Judge Alvey.[24]

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). State sovereign immunity applies to actions under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). "'Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.'" *Amaro v. New Mexico*, 737 F. App'x 882, 888 (10th Cir. 2018) (quoting *Will*, 491 U.S. at 66).

---

[24] A sovereign immunity defense is jurisdictional, depriving the court of subject matter jurisdiction if it applies. *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009). So, the court addresses Judge Alvey's sovereign immunity defense under Rule 12(b)(1). *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180–82 (10th Cir. 2002) (analyzing whether defendant was entitled to sovereign immunity on a Rule 12(b)(1) motion).

But the Supreme Court has recognized that "this immunity from suit is not absolute[.]" *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Under the *Ex parte Young* exception, "a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). And "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Id.* (citing *Ex parte Young*, 209 U.S. at 155–56). "*Ex parte Young* applies to both injunctive and declaratory relief." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022) (citation omitted).

Unfortunately for Mr. Burch, there's an exception to the exception. The *Ex parte Young* exception doesn't apply to state judicial officers to prevent them "from acting in any case brought before" the court. *Ex parte Young*, 209 U.S. at 163; *Jackson v. Mason*, No. 23-2464-DDC-ADM, 2024 WL 3695293, at *8 (D. Kan. Aug. 7, 2024) ("'The *Ex parte Young* exception expressly prohibits injunctions toward state *judicial* officers regarding their adjudication of the cases and controversies put before them.'" (quoting *Williams v. Parikh*, 708 F. Supp. 3d 1345, 1355 (S.D. Ohio 2023)) (emphasis in original)). To allow a federal court to enjoin state judicial officers would "be a violation of the whole scheme of our government" and isn't included in the *Ex parte Young* exception. *Ex parte Young*, 209 U.S. at 163; *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (finding the exception "does not normally permit federal courts to issue injunctions against state-court judges or clerks").

Mr. Burch asks this court to issue declaratory and injunctive relief against Judge Alvey based on her adjudicating Mr. Burch's annual review proceeding. Doc. 20 at 5 (Am. Compl. ¶ C.9.). The *Ex parte Young* exception to sovereign immunity doesn't apply to either one of

those requests.  *See Jackson*, 2024 WL 3695293, at *8 (refusing to apply the exception to both injunctive and declaratory relief against a judge).  So, sovereign immunity bars all claims against defendant Judge Alvey and the court dismisses them all with prejudice.  The court turns next to another basis defendants suggest for dismissal:  collateral estoppel.

### D.    Collateral Estoppel

Defendants argue that Mr. Burch made "the exact same arguments" he makes here in the state case.  Doc. 40 at 19.  And, they contend, each was adjudicated finally on the merits.  So, collateral estoppel bars several of these requests for relief.  *Id.*  Defendants also assert Mr. Burch argued that:  "the court wrongfully held his annual review hearing in his absence, denied him his own expert witness, denied him the adversarial process, and did not give him the same rights as criminal defendants."  *Id.*  Mr. Burch responds that the claims here are "matter[s] that ha[ve] never been decided by any State or Federal Court, true to the point that no case has been cited by Defendant(s)."  Doc. 46 at 17.  Mr. Burch's collateral estoppel argument is off base, centering mainly on the Supreme Court's decision in *Kansas v. Hendricks*.  Doc. 46 at 17–18.  But the case defendants cite to justify collateral estoppel—properly—is Mr. Burch's own.

Collateral estoppel is an affirmative defense that, ordinarily, a party must plead.  Fed. R. Civ. P. 8I; *Blonder-Tongue Laby's, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) (citing Rule 8I).  But a party properly may base a Rule 12(b)(6) motion on an affirmative defense. *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965); *Jiying Wei v. Univ. of Wyo. Coll. of Health Sch. Pharmacy*, 759 F. App'x 735, 739–40 (10th Cir. 2019) (explaining it's appropriate to resolve an affirmative defense on a 12(b)(6) motion to dismiss).  And the court can dismiss a complaint because of an affirmative defense "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements."  *Fernandez*

*v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).  Because this is a Rule 12(b)(6)

motion, the court also can "consider 'matters of which [it] may take judicial notice.'"  *Jiying*

*Wei*, 759 F. App'x at 740 (quoting *Warnick v. Cooley*, 895 F.3d 746, 754 n.6 (10th Cir. 2018))

(considering matters judicially noticed in deciding an affirmative defense on a Rule 12(b)(6)

motion).  The court judicially notices the Wyandotte County District Court's Journal Entry and

Order on Mr. Burch's 2021 annual review and the state appellate court's opinion.[25]

       When reviewing a state court judgment's preclusive effect, a federal court must follow

the preclusion law of that state.  *Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir.

2008).  Defendants argue some of Mr. Burch's asserted legal issues are precluded by a judgment

issued by the Wyandotte County District Court and affirmed by the Kansas Court of Appeals.

Doc. 40 at 19.  So, the court must apply Kansas preclusion law.[26]  Under Kansas law, collateral

estoppel "prevents a second litigation of the same issue between the same parties, even when

raised in a different claim or cause of action."  *In re Application of Fleet for Relief from a Tax*

*Grievance*, 272 P.3d 583, 589 (Kan. 2012).  Collateral estoppel has three elements:

> (1) a prior judgment on the merits that determined the parties' rights and
> liabilities on the issue based upon ultimate facts as disclosed by the pleadings
> and judgment; (2) the same parties or parties in privity; and (3) the issue
> litigated must have been determined and necessary to support the judgment.

*Id.* at 589–90 (citing *Venters v. Sellers*, 261 P.3d 538, 547 (Kan. 2011)).  Defendants bear the

burden of proving the affirmative defense of collateral estoppel.  *See, e.g.*, *Kincaid v. Sturdevant*,

---

[25]     *In re Burch*, No. 2001-PR-000412 (Kan. 29th Jud. Dist. Ct. Sept. 2, 2021) and *In re Burch*, 515
P.3d 296, 2022 WL 3568607 (Kan. Ct. App. 2022), respectively.

[26]     Here, defendants briefed federal, not Kansas, collateral estoppel law.  *See* Doc. 40 at 18–19.  And
the Kansas and federal standards differ.  *Compare Columbian Fin. Corp. v. Bowman*, 768 F. App'x 847,
851 (10th Cir. 2019) (applying Kansas collateral estoppel standard for reviewing a Kansas judgment);
*with United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992) (applying federal common law
collateral estoppel standard for reviewing a federal judgment).  But no matter, the court concludes that
Kansas's elements are satisfied for some of Mr. Burch's claims on the facts as presented by the plaintiff.

437 F. Supp. 2d 1219, 1224 (D. Kan. 2006) (applying Kansas and federal law "interchangeably" and finding defendants failed to shoulder their collateral estoppel burden on a motion to dismiss). Collateral estoppel bars a § 1983 claim "when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims[.]" *Allen v. McCurry*, 449 U.S. 90, 104 (1980). "There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court[.]" *Id.*

### 1. Privity

Out of convenience, the court addresses the second element first—privity. The court concludes that the privity requirement is satisfied. Kansas's privity requirement "requires careful examination into the circumstances of each case[.]" *Cain v. Jacox*, 354 P.3d 1196, 1200 (Kan. 2015) (internal quotation omitted). "[A]gents of the same government are in privity with each other, since they represent not their own rights but the right of the government." *State v. Parson*, 808 P.2d 444, 448 (Kan. App. 1991) (analyzing *Goetz v. Bd. of Trs.*, 454 P.2d 481 (Kan. 1969), *Pierce v. Bd. of Cnty. Comm'rs*, 434 P.2d 858 (Kan. 1967), and 46 AM. JUR. 2d *Judgments* § 578). Here, government defendants are sued in their official capacities as agents of the State of Kansas. *See above* n.2. Kansas was a party to the state court judgment. *See In re Burch*, No. 2001-PR-000412, at 1; Doc. 40-2 at 2. And Mr. Burch was a party to the state court judgment in his annual review hearing and its subsequent appeal. *See In re Burch*, 515 P.3d 296, 2022 WL 3568607, at *1 (Kan. Ct. App. 2022). So, Mr. Burch was a party and the government defendants are in privity with a party to the earlier action. The privity element is satisfied.

### 2. Prior Judgment & Necessarily Decided

The court considers the first and third collateral estoppel elements together. The first element demands "a prior judgment on the merits that determined the parties' rights and liabilities on the issue based upon ultimate facts as disclosed by the pleadings and judgment[.]" *In re Application of Fleet for Relief from a Tax Grievance*, 272 P.3d at 589. The third element requires "the issue litigated must have been determined and necessary to support the judgment." *Id.* at 589–90.

The state action was finally adjudicated, with judgment entered by the Wyandotte County District Court and affirmed by the Kansas Court of Appeals. Doc. 40 at 19. But—while defendants argue that each relevant argument was decided on the merits in the state case—the court disagrees. The Kansas collateral estoppel elements require that the earlier judgment on the merits have determined the parties' rights and liabilities on the issue and that each actually was determined and necessary to the judgment. *In re Application of Fleet for Relief from a Tax Grievance*, 272 P.2d at 589–90. Thus, Mr. Burch would've had to raise the same issues in both actions, the court would've had to decide each issue, and those decisions must have been necessary to resolve the controversy. So, the court takes each constitutional issue one-by-one to determine whether the state court already has decided that issue.

#### a. Denial of Expert Witness at Annual Review Probable Cause and Evidentiary Hearings

Mr. Burch asks the court here to declare the denial of an expert witness at an annual review hearing violates the Fourteenth Amendment. Doc. 20 at 13 (Am. Compl. ¶ E.1.A.). It's unclear in the state appellate court's opinion whether Mr. Burch raised this point on appeal because the court recognized that the annual report takes the place of an expert's testimony. *See In re Burch*, 2022 WL 3568607, at *5 (recognizing that the annual report is used "'in the same

manner and with the same force and effect as if the qualified expert had testified in person'" (quoting Kan. Stat. Ann. § 59-28a08(d)).  This reference may imply that Mr. Burch raised this point in state court.  And, perhaps the Court of Appeals found that the district court didn't err by finding an absence of probable cause at the hearing based on findings from the annual report.  *Id.* at *5.  But what the appellate court certainly didn't do was determine whether denying an expert witness violated Mr. Burch's constitutional rights.  So, this issue wasn't decided in state court.  Nor was this Fourteenth Amendment issue necessary to the judgment.  So, the issue isn't barred by collateral estoppel.

### b.    Gathering Evidence in Opposition to the State's Annual Report

Mr. Burch also asks the court to declare his constitutional right to "gather evidence to subject the State's report to the adversarial process."  Doc. 20 at 14 (Am. Compl. ¶ E.1.F.).  This includes, in his view, "an independent examiner, discovery[,] and any other method allowed" for due process.  *Id.*  In state court, Mr. Burch argued that the district court abused its discretion under the KSVPA by denying his request for an independent examiner.  *In re Burch*, 2022 WL 3568607, at *5.  But that was all he argued about gathering evidence.  And as far as the court can tell, Mr. Burch never argued that due process required discovery before an annual report, and the Kansas appellate court never decided that issue.

What's more, on Mr. Burch's claim that the state district court abused its discretion by denying an independent examiner, the state appellate court determined, "Burch [did] not claim that the district court made an error of law or fact, thus he argue[d] solely that no reasonable person would take the same position as the district court."  *Id.* at *6.  So, in the state appellate court's view, Mr. Burch never challenged the constitutionality of denying an independent examiner.  Confusingly though, the Kansas Court of Appeals also recognized Mr. Burch's

citation to a California case finding reversible error when the state denied an independent examiner in a civil commitment trial. *Id.* at *7. The case Mr. Burch cited was decided on due process grounds. *People v. Jackson*, 75 Cal. App. 5th 1, 24–27 (2022). So, despite the appellate court's intimation, it seems that Mr. Burch did indeed raise the constitutionality issue in state court, at least to a certain extent.

But the Kansas Court of Appeals didn't actually decide the independent examiner issue to render its judgment. And the Wyandotte County District Court didn't answer the question either. The Wyandotte County District Court found that Mr. Burch had failed to show good cause for an independent examiner, as required by the KSVPA. *In re Burch*, 2022 WL 3568607, at *7. And the Kansas Court of Appeals held the District Court didn't abuse its discretion in so finding. *Id.*

To be sure, when deciding a *different* one of Mr. Burch's arguments, the Court of Appeals recognized cases finding the KSVPA as a whole facially constitutional. *Id.* at *4 (first citing *In re Care & Treatment of Hay*, 953 P.2d 666 (Kan. 1998); and then citing *Griffin v. Bruffett*, 389 P.3d 992 (Kan. Ct. App. 2017)). And the court—when deciding Mr. Burch's due process challenge about that different issue—recognized that Mr. Burch was denied an independent examiner under the statute. *Id.* The appellate court held—because the KSVPA was applied as written in Mr. Burch's case—that he "was not deprived of due process." *Id.* But as far as the court can tell now, the state appellate court didn't address (at least not specifically) whether Mr. Burch was denied due process because he was denied an independent examiner. Instead, it decided whether he was denied due process because the hearing was held in his absence. *See id.* at *3–5 (making these points under the heading "Holding the Annual Review Hearing in Absentia"). So, the state appellate court didn't necessarily decide this issue as part of

the judgment.[27]  So, the due process claim based on the independent examiner issue isn't barred by collateral estoppel.

### c. Use of the Annual Report as Sole Basis for Recommitment without Adversarial Review

Mr. Burch also asks the court to declare that using the department's annual report as the "sole grounds for recommitment without adversarial review" violates his Due Process rights. Doc. 20 at 14 (Am. Compl. ¶ E.1.E.).  In state court, Mr. Burch made two arguments on this point.  *First*, he argued that the state district court violated his due process rights by denying him a probable cause hearing when it shouldn't have considered the department's annual report or other evidence against him at all.  *In re Burch*, 2022 WL 3568607, at *5.  *Second*, he argued that the state's annual report doesn't satisfy the KSVPA's statutory requirements for denying an evidentiary hearing.  *Id.*  The state Court of Appeals rejected both of these arguments.  *Id.*  But it never decided whether recommitment is constitutional when solely based on the state's report

---

[27]     The state appellate court recognized that the KSVPA as a whole is facially constitutional, as they had held in earlier cases.  *In re Burch*, 2022 WL 3568607, at *4.  They followed that recognition by outlining a number of procedures under that statute that were followed in Mr. Burch's case, including the decision denying an independent examiner.  *Id.*  And they concluded that because "the Kansas Supreme Court has held that the statutory scheme of the KSVPA is constitutional if followed, and because the district court followed it in Burch's case, Burch was not deprived of due process."  *Id.* (deciding Mr. Burch's constitutional claim about the district court holding the annual review hearing in his absence). But this language about the independent examiner—and the other miscellany of procedures applied in Mr. Burch's case—is mere dicta.  Dicta is a ruling in an opinion that is unnecessary to the judgment.  *R.P. v. First Student, Inc.*, 515 P.3d 283, 295 (Kan. Ct. App. 2022) ("Obiter dictum is defined as words of a prior opinion entirely unnecessary for the decision of the case." (quotation cleaned up)).  And for collateral estoppel purposes, a finding is not necessary to the judgement if it is dicta.  *Cousatte v. Lucas*, 136 P.3d 484, 491 (Kan. Ct. App. 2006) (finding that dismissal was based on a lack of jurisdiction and so, rulings about constructive trust were dicta that was not decided on the merits and not necessary to the judgment for collateral estoppel purposes).  The court concludes that the state appellate court's notation that various procedures under the KSVPA had been applied in Mr. Burch's case, despite Mr. Burch not raising constitutional challenges to those procedures—as far as the court can tell from the state appellate court's opinion—was mere dicta and wasn't necessary to the judgment.

without adversarial review.[28]  And Mr. Burch never raised this issue.  So, collateral estoppel doesn't bar this request either.

### d.       Annual Review Rights Aligned with Rights of Inmates

Mr. Burch asks the court to decide whether the rights that inmates have during incarceration or parole are the minimal rights constitutionally required for sexually violent predators during an annual review.  Doc. 20 at 15 (Am. Compl. ¶ E.1.L.).  As best the court can tell, Mr. Burch never raised this issue in state court.  *See generally In re Burch*, 2022 WL 3568607.  So, the state court didn't issue a judgment on the merits on this issue.  This claim survives as well.

### e.       Holding the Annual Review Hearing in Mr. Burch's Absence

Mr. Burch asks the court to declare that holding an annual review hearing in his absence violates due process.  Doc. 20 at 14 (Am. Compl. ¶ E.1.D.).  But Mr. Burch raised this issue in state court.  *See In re Burch*, 2022 WL 3568607, at *2.  And the state appellate court squarely held that the KSVPA's procedure allowing an annual review probable cause hearing in the civilly committed person's absence doesn't violate due process.  *Id.* at *4.  This issue thus was actually decided and necessary to the state court judgment.  So, if Mr. Burch had a full and fair opportunity to litigate this issue—discussed in § III.D.3 below—then collateral estoppel bars him from re-litigating it here.

---

[28]       The state appellate court found that Mr. Burch was entitled to have an attorney present at the probable cause hearing and that Mr. Burch "point[ed] to no evidence that he wanted to admit that his attorney could not have admitted in his absence."  *In re Burch*, 2022 WL 3568607, at *4.  This language implies that the state court recognized Mr. Burch's entitlement to adversarial processes—having an attorney and that attorney's ability to admit evidence.  So, the court never addressed the constitutionality of commitment based on the state's report *absent* adversarial review.

### f.    Annual Review Rights Aligned with Rights of Criminal Defendants in Criminal Proceedings

Mr. Burch also asks the court to decide whether the rights that criminal defendants have during criminal proceedings are the minimal rights constitutionally required for sexually violent predators during an annual review. Doc. 20 at 15 (Am. Compl. ¶ E.1.K.). In state court, as part of his in absentia-proceeding argument, Mr. Burch argued that he was entitled to the same rights that would inhere for a criminal defendant. *In re Burch*, 2022 WL 3568607, at *2. When deciding that issue, the state court evaluated and distinguished two out-of-jurisdiction cases holding that sexually violent predators are entitled to the same rights as pretrial detainees and prisoners. *Id.* at *4. But the court decided that this wasn't so in Kansas, at least for annual review probable cause hearings. After all, the Kansas Supreme Court already had decided the KSVPA—in its entirety—is facially constitutional. *Id.* (citing *In re Care & Treatment of Hay*, 953 P.2d 666). So, the issue actually was decided and necessary to support the judgment. Collateral estoppel bars this request as well, provided that Mr. Burch had a full and fair opportunity to litigate his claims.

### 3.    Full and Fair Opportunity to Litigate

Whether Mr. Burch is collaterally estopped from relitigating these last two issues depends on whether he had "a full and fair opportunity to litigate" them in state court. *See B.E. v. Pistotnik*, 517 P.3d 143, 2022 WL 4391063, at *6 (Kan. Ct. App. 2022) ("Kansas courts have declined to adopt the doctrine [of collateral estoppel] where the underlying proceeding did not provide a full and fair opportunity to litigate an issue."). A full and fair opportunity "means there is no reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Wanjiku v. Johnson Cnty.*, 173 F. Supp. 3d 1217, 1226 (D. Kan. 2016) (quotation cleaned up). Courts consider procedural limitations, party incentives to fully litigate the claims,

and limits to effective litigation based on the nature or relationship of the parties. *Id.* The court concludes Mr. Burch had a full and fair opportunity to litigate his claims.

Defendants argue Mr. Burch had a full and fair opportunity because he had appointed counsel available before the state court. Doc. 40 at 19. Mr. Burch responds that he wasn't properly represented in state court because he "was not allowed to attend the hearing, . . . has alleged ineffective assistance of counsel, and none of the issues he wanted presented were allowed to be heard." Doc. 46 at 18. What's more, he says, "he was denied the right to present evidence, the report of his independent examiner." *Id.* But Mr. Burch represented himself in his appeal from Judge Alvey's decision. Doc. 20 at 5 (Am. Compl. ¶ C.2.10.). And he even appealed the appellate court's decision to the Kansas Supreme Court, which declined review. *Id.* at 6 (Am. Compl. ¶ C.2.10.e.–f.). He also was able to raise the "issues he wanted presented" on appeal of the Wyandotte County District Court's decision to challenge the procedures he raises here. *See In re Burch*, 2022 WL 3568607, at *2 (reflecting Mr. Burch's three challenges to the KSVPA and the State's conduct on appeal). He raised the two issues above on appeal, the court considered his arguments, and the court ruled against him. Mr. Burch can't now argue that he didn't have an opportunity to present these issues in state court.

The court also doesn't buy Mr. Burch's argument that his counsel was ineffective, and therefore he didn't have a full and fair opportunity to litigate. Defendants reply that Mr. Burch shouldn't get to argue ineffective counsel prevented him from having an opportunity to litigate these issues. Doc. 49 at 3. They say Mr. Burch "represented himself . . . and had a full opportunity to make the arguments he makes now before that [state] court." *Id.* The court agrees.

Though Mr. Burch complains that he wasn't represented by his appointed counsel on appeal,[29] *see* Doc. 20 at 5 (Am. Compl. ¶ C.2.8.), he was represented in the state district court. He then represented himself on appeal.  Mr. Burch alleges that Kansas holds that a sexually violent predator isn't entitled to assistance of counsel during his appeal.  *Id.* at 8–9 (Am. Compl. ¶ C.2.17.).  But Mr. Burch hasn't shown that he was entitled to the assistance of his *appointed* counsel on appeal.  What's more, many courts have held that one's pro se status doesn't alleviate the consequences of preclusion.  *See, e.g.*, *Joritz v. Univ. of Kan.*, No. 17-4002-SAC-JPO, 2020 WL 5253396, at *4 (D. Kan. Sept. 3, 2020) (finding that pro se litigants are "held to the consequences of the res judicata doctrine" in assessing full and fair opportunity to litigate); *In re Tsamasfyros*, 940 F.2d 605, 607 (10th Cir. 1991) ("[T]he fact that a bankruptcy debtor appeared pro se in a prior state court proceeding does not lessen the collateral effect of the state court judgment." (emphasis omitted)); *Waltington v. Browne*, 791 F. App'x 720, 724 (10th Cir. 2019) (rejecting argument that court's treatment of plaintiff's pro se status affected full and fair opportunity to litigate his claim).  So, the court concludes, Mr. Burch had a full and fair opportunity to litigate:  (1) whether denial of access to an annual review hearing is constitutional; and (2) whether individuals committed under the KSVPA are entitled to the same rights as defendants in criminal proceedings.  Thus, he is collaterally estopped from re-litigating these issues now.

---

[29]    Mr. Burch also "vaguely mention[ed] that the [state] district court denied his counsel the opportunity to properly represent him."  *In re Burch*, 2022 WL 3568607, at *5.  Because Mr. Burch didn't develop the argument or connect it to any support in the record on appeal, the state appellate court concluded he had waived or abandoned it.  *Id.*

Here, in the current action, the court isn't in the business of manufacturing an ineffective assistance of counsel claim for Mr. Burch.  All he says about his appointed counsel is that he "didn't follow through with the appeal."  Doc. 20 at 5 (Am. Compl. ¶ C.2.8.).  Mr. Burch has failed to explain how he thinks his counsel was ineffective, and this court must not craft a legal argument for him.  *Whitney*, 113 F.3d at 1173–74.

E.      **Failure to State a Claim**

Defendants summarily ask the court to "dismiss any claims Burch makes in his complaint that a law or act is 'unconstitutional' without further development of these claims because these allegations fail to state a claim for which relief may be granted."[30]  Doc. 40 at 5.  But that is about all defendants say on the matter.  Defendants don't investigate Mr. Burch's factual allegations.  They merely provide something of a drive-by, conclusory explanation of how they think Mr. Burch has failed to develop his claims.  And they embed it in their standing argument. *See* Doc. 40 at 22–23.

In short, they say Mr. Burch hasn't explained his constitutional theory.  They cite a single 2004 case dismissing pro se claims that didn't identify the constitutional rights the plaintiff claimed were violated.  *See id.* at 5 (citing *Gilbert v. Kansas*, No. 04-4005-SAC, 2004 WL 432229, at *1 (D. Kan. Feb. 12, 2004)).  But defendants' sweeping assertion overlooks Mr. Burch identifying two constitutional provisions in the "Cause of Action" section of his Amended Complaint:  the Due Process Clause (labeled "Count I") and the First Amendment (labeled "Count II").  Doc. 20 at 3 (Am. Compl. ¶¶ C.1.A., B.).  Perhaps Mr. Burch, as a pro se litigant, "fail[ed] to cite proper legal authority," confused "various legal theories," and is unfamiliar with pleading standards.  *Hall*, 935 F.2d at 1110.  But that isn't a reason—standing alone—to dismiss his remaining claims.  *Id.* (finding that if court reasonably can read the pleadings to state a plausible claim on which the pro se plaintiff could prevail, court should do so).  And this court "cannot be expected to read [defendants'] minds" about how they think Mr. Burch's pleaded facts fail to support his Due Process and First Amendment claims.  *See Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1142 (10th Cir. 2024) (quotation cleaned up).

---

[30]      This applies to Mr. Burch's Requests for Relief E.1.B, J, K, L, C, G, H, and P.  *See* Doc. 40 at 5.

"Judges are not like pigs, hunting for truffles buried in briefs." *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913, 927 (10th Cir. 2022) (quotation cleaned up). So, the court declines to assess defendants' perfunctory failure to state a claim argument, and it declines to base any decision on it.

### F.    Prospective vs. Retrospective Relief

Defendants raise defenses that, if they apply, would wipe out plaintiff's claims. Several of these defenses turn on the type of relief Mr. Burch seeks.[31] And—though the prospective nature of that relief gives defendants' standing argument a leg up—it kneecaps two of defendants' other arguments: *Heck* and *Rooker-Feldman*.

Mr. Burch's requests for relief reference his past experiences in civil commitment proceedings. *See* Doc. 20 at 13–16. And he imprecisely specifies whether he asks the court to declare that defendants violated his rights in the past or what his rights are going forward. *Id*. But defendants admit that Mr. Burch "requests only injunctive and declaratory relief." Doc. 40 at 2 n.2. And Mr. Burch notes that he seeks "declaratory and then injunctive relief to enforce his Constitutional rights that the Court finds applicable." Doc. 20 at 3. And so, the court must determine whether these statements suffice to establish that Mr. Burch seeks only prospective

---

[31]    Defendants argue a number of Mr. Burch's claims are barred by the *Heck* and *Rooker-Feldman* doctrines. Doc. 40 at 5–6. But *Heck* only bars § 1983 actions by plaintiffs seeking retrospective relief that would render a conviction or sentence invalid, absent proof that the conviction or sentence has already been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). The doctrine doesn't apply to claims for prospective relief. *See, e.g.*, *Lawrence v. McCall*, 238 F. App'x 393, 396 (10th Cir. 2007).

*Rooker-Feldman* "precludes federal district courts from effectively exercising appellate jurisdiction" over claims decided in state court. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006). But *Rooker-Feldman* doesn't preclude claims for prospective declaratory relief either. *See id.* at 1237–38 (finding *Rooker-Feldman* inapplicable when the plaintiff "requested only prospective injunctive and declaratory relief" that wouldn't "disrupt the judgment of the Colorado Supreme Court"); *Market v. City of Garden City*, 723 F. App'x 571, 574 (10th Cir. 2017) ("[C]laims for prospective injunctive and declaratory relief aren't barred, even when litigation could result in contradictory state-court and federal-court decisions, because the prospective relief requested would not undo the penalties imposed by the state-court judgment." (quotation cleaned up)).

relief.  This matters because two of defendants' defenses don't apply to claims for prospective

relief:  the *Heck* doctrine and *Rooker-Feldman*.  *See Lawrence v. McCall*, 238 F. App'x 393, 396

(10th Cir. 2007) (recognizing the *Heck* doctrine doesn't bar claims for prospective relief); *Mo's*

*Express, LLC v. Sopkin*, 441 F.3d 1229, 1237–38 (10th Cir. 2006) (finding *Rooker-Feldman*

inapplicable when plaintiff "requested only prospective injunctive and declaratory relief" that

wouldn't "disrupt the judgment of the Colorado Supreme Court").[32]

Our Circuit generally construes requests for declaratory relief as retrospective only to the

extent they are intertwined with requests for monetary damages that require the court to declare

whether a past constitutional violation has occurred.  *See Winsness v. Yocom*, 433 F.3d 727, 735

(10th Cir. 2006) (evaluating whether plaintiff had standing to seek declaratory relief).  But Mr.

Burch doesn't seek any damages at all.  He seeks declaratory and injunctive relief to enforce his

constitutional rights going forward.  Doc. 20 at 3.  Nearly all his requests for relief begin with the

word "declare" and are followed by requests framed—mostly—in present or future tense.[33]  *See*

*generally id.* at 13–16 (Am. Compl. ¶ E.1.A.–Q.); *cf. Makthepharak v. Kelly*, No. 23-2121-DDC-

RES, 2024 WL 1256085, at *7–8 (D. Kan. Mar. 25, 2024) (requests for declaratory relief about

procedures used in one proceeding and phrased in the past tense were not retrospective because

---

[32]      Defendants also argue that Mr. Burch's request for prospective relief "still asks this Court to
modify or set aside the state courts' decisions to continue his civil confinement."  Doc. 40 at 18.  The
court isn't persuaded.  Mr. Burch is requesting a declaration of his rights.  If this court were to grant Mr.
Burch's requested relief, it wouldn't reverse the Wyandotte County District Court's decision that he
needed to remain confined at the 2021 annual review.  It would merely clarify the constitutionality of the
procedures Mr. Burch challenges.

[33]      Mr. Burch does seek a declaration that Kansas doesn't "measure change in the degree of mental
abnormality or personality disorder that caused Mr. Burch to be committed" and "[a]s such[,] no measure
has ever been included in an annual review examination submitted to the Court by the state."  Doc. 20 at
15 (Am. Compl. ¶ E.1.P.).  But even if the court construed this request for relief as retrospective, Mr.
Burch never pleaded that Kansas didn't measure his degree of dangerousness or that his state reports
never included any measure of his dangerousness.  As addressed above, Mr. Burch pleads the opposite.
*See above* Part III.A.3.a.ii.

plaintiff challenged ongoing violations of federal law and didn't seek to impose liability for a past breach of a legal duty). And Mr. Burch responds to defendants' *Heck* doctrine argument by asserting he seeks "a determination of his rights" which "will not lead to his release[,] as he seeks it for future events . . . which ha[ve] not occurred." Doc. 46 at 16; *see Winsness*, 433 F.3d at 730, 735 (finding plaintiff requested prospective declaratory and injunctive relief because he "abandoned any claim for monetary damages" and "the Complaint s[ought] equitable relief strictly to prevent future enforcement of the . . . statute"); *Makthepharak*, 2024 WL 1256085, at *8 (finding—in Eleventh Amendment analysis—that requested declaratory relief was prospective where plaintiff asked for declarations that a parole process was unconstitutional, the declaratory relief "add[ed] nothing to the injunction," and it wouldn't impose liability on defendants "from a past breach of legal duty" (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))).[34] Mr. Burch repeatedly emphasizes that he "seeks a decision for proceedings in the future[.]"[35] Doc. 46 at 18. Because Mr. Burch proceeds pro se, the court

---

[34]     The court reviewed *Markham v. Rios*, No. CIV-18-1247-G, 2019 WL 4039631, at *1 (W.D. Okla. Aug. 27, 2019), where the Western District of Oklahoma rejected a plaintiff's argument that their declaratory relief was prospective because the purpose was to prevent future violations. That court concluded that the plaintiff failed to allege any ongoing violation of federal law and the plaintiff didn't challenge that determination. *Id.* The magistrate judge's report and recommendation in *Markham* outlined the plaintiff's requests for relief and explained that "[p]laintiff seeks to have [d]efendants' past conduct deemed unconstitutional." *Markham v. Rios*, No. CIV-18-1247-G, 2019 WL 4940270, at *3 (W.D. Okla. Mar. 21, 2019), *report and recommendation adopted*, 2019 WL 4039631. Not so here. Mr. Burch refers to defendants' past conduct, but his requests for declaratory relief operate prospectively. And the requests for declaratory relief deemed retrospective in *Markham* accompanied a request for damages. *Id.* at *2–3; *see also Winsness*, 433 F.3d at 735 ("We have noted that a declaratory judgment is generally prospective relief, and that we treat declaratory relief as retrospective only to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred." (quotation omitted)).

[35]     *See also* Doc. 46 at 19 ("Thus, Mr. Burch has standing to seek a declaration for his rights in future proceedings."); *id.* at 15 ("[I]t would only put in place notice of what his rights are and that failure to enforce them in future annual reviews could be an avenue for him to seek release."); *id.* at 14 ("[H]e seeks a definition of his Constitutional rights during any future annual review and once defined set an injunction to insure that these rights are upheld in the future annual reviews." (citing the request for relief section of his Amended Complaint)).

takes him at his word.  So, the court liberally construes Mr. Burch's Amended Complaint as seeking wholly prospective relief.  And, as a result, defendants' *Heck* and *Rooker-Feldman* defenses don't apply.

### G.   Dismissing with Leave to Amend

Where the court agrees with defendants, the court ordinarily would dismiss the causes of action in the complaint but give Mr. Burch leave to amend.  *See Reynoldson*, 907 F.2d at 126 ("If it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." (quotation cleaned up)).  "Particularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable."  *Id.*  But dismissal without leave to amend is proper where it would prove futile to give plaintiff an opportunity to amend.  *See Whitney*, 113 F.3d at 1173 (in the context of a Rule 12(b)(6) motion to dismiss); *see also Peterson v. Lampert*, 499 F. App'x 782, 784 (10th Cir. 2012) (applying the same rule to a Rule 12(b)(1) motion to dismiss).

It would prove futile for Mr. Burch to amend his Complaint to reframe some of his claims.  Sovereign immunity bars all claims against Judge Alvey.  His claim about the constitutionality of in absentia annual review hearings and KSVPA civil committees having the same rights as criminal defendants are barred by collateral estoppel.  His claim that the KSVPA violates the Ex Post Facto and Double Jeopardy clauses is barred by the Supreme Court's decision in *Kansas v. Hendricks*.  So, it would prove futile for Mr. Burch to amend his Complaint for these claims.

## IV.   Conclusion

In sum, Mr. Burch has standing to raise Requests for Relief (1)(A), (B), (M), (O), (D), but only to the extent he challenges in absentia probable cause hearings; Request (J), but only to the extent he claims confinement is unconstitutional based on a person's not completing the program; and Request (Q), but only to the extent he claims he is unconstitutionally deprived of the ability to request final discharge before reaching the end of conditional release.  But Mr. Burch lacks standing to raise Requests for Relief (1)(C), (E), (F), (G), (H), (I), (K), (L), (N), (P), (D), to the extent he claims in absentia evidentiary hearings are unconstitutional; Request (J) to the extent he claims confinement is unconstitutional if the decision is based on having issues with staff; and Request (Q) to the extent he claims the conditional release program's five year period before final discharge and practice of re-commitment based on rule violations are unconstitutional.  Ordinarily, the court would dismiss without prejudice each of the claims for which Mr. Burch lacks standing but give Mr. Burch the opportunity to amend his Complaint and sufficiently allege standing, if he is able.  Here, though, some of these claims are barred by other defenses, so it is futile for Mr. Burch to amend his Complaint in response to those defenses.  The court explicitly identifies the claims it dismisses with prejudice in the chart below.  This same chart also identifies the claims which survive.

| Claim | Applicable Defense | Result |
|---|---|---|
| Due Process challenge to the denial of an expert witness at an annual review hearing<br><br>**Request for Relief E.1.A** | None | Remains in case |
| Due Process challenge to the practice of denying release based on failure to complete the treatment program<br><br>**Requests for Relief E.1.B, J (in part), M** | None | Remains in case |

| | | |
|---|---|---|
| Due Process challenge to the practice of denying individuals the ability to petition for discharge if they haven't completed conditional release<br><br>**Requests for Relief E.1.O, Q (in part)** | None | Remains in case |
| All claims against defendant Judge Constance Alvey | Sovereign Immunity | Dismissed with prejudice |
| Due Process challenge to the policy preventing a securely confined individual from being present at an annual review *probable cause* hearing<br><br>**Request for Relief E.1.D (in part)** | Collateral Estoppel | Dismissed with prejudice |
| Due Process challenge to the KSVPA's procedures because they don't mirror the procedural protections of criminal defendants<br><br>**Request for Relief E.1.K** | Standing & Collateral Estoppel | Dismissed with prejudice |
| Ex Post Facto, Double Jeopardy, and Due Process challenge to the KSVPA's practice of confining individuals based solely on past criminal offenses<br><br>**Request for Relief E.1.I** | Standing & *Kansas v. Hendricks* | Dismissed with prejudice |
| Due Process challenge to the policy preventing a securely confined individual from being present at an annual review *evidentiary* hearing<br><br>**Request for Relief E.1.D (in part)** | Standing | Dismissed without prejudice |
| Due Process challenge on the theory that Kansas doesn't measure the degree of dangerousness or that confinement without evidence of a lack of control from a mental abnormality or personality disorder is unconstitutional<br><br>**Requests for Relief E.1.C, G, H, N, P** | Standing | Dismissed without prejudice |
| Due Process challenge alleging it is unconstitutional to deny discharge based solely on a state report<br><br>**Request for Relief E.1.E** | Standing | Dismissed without prejudice |
| Due Process challenge alleging it is unconstitutional to deny a securely confined person the ability to gather evidence for an annual review<br><br>**Request for Relief E.1.F** | Standing | Dismissed without prejudice |

| | | |
|---|---|---|
| Due Process challenge to confinement based on a securely confined individual's issues with staff<br><br>**Request for Relief E.1.J (in part)** | Standing | Dismissed without prejudice |
| Due Process challenge to KSVPA's mandatory five-year period on conditional release before final discharge<br><br>**Request for Relief E.1.Q (in part)** | Standing & Ripeness | Dismissed without prejudice |
| Due Process challenge to Kansas's practice of re-confining individuals based on rule violations while on conditional release<br><br>**Request for Relief E.1.Q (in part)** | Standing & Ripeness | Dismissed without prejudice |
| Due Process challenge to the KSVPA's procedures because they don't mirror the procedural protections of inmates, parolees, or post-release supervisees<br><br>**Request for Relief E.1.L** | Standing | Dismissed without prejudice |
| First Amendment challenge | Standing | Dismissed without prejudice |

To summarize, the following claims remain in the case:

- Request for Relief E.1.A in Doc. 20 at 13 (Am. Compl. ¶ E.1.A.)—seeking declaration that denying an expert witness at a probable cause hearing infringes Mr. Burch's due process rights;

- Requests for Relief E.1.B, J (in part), and M in Doc. 20 at 13–15 (Am. Compl. ¶¶ E.1.B., J., M.)—seeking declaration that continued confinement based on failure to complete the treatment program infringes Mr. Burch's due process rights; and

- Requests for Relief E.1.O, and Q (in part) in Doc. 20 at 15–16 (Am. Compl. ¶¶ E.1.O., Q.)—seeking declaration that denying Mr. Burch the ability to petition for discharge even if he hasn't completed conditional release infringes Mr. Burch's due process rights.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 39) is granted in part and denied in part, as specified in the chart above, for the reasons explained in this Order.

**IT IS FURTHER ORDERED THAT** Mr. Burch's Motion for Ruling (Doc. 50) is granted.

**IT IS SO ORDERED.**

**Dated this 30th day of September, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**