## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TIMOTHY J. BURCH,

                                    Plaintiff,                    Case No. 23-3022-DDC

v.

LAURA HOWARD, et al.,

                                    Defendants.

## MEMORANDUM AND ORDER

Plaintiff Timothy J. Burch, proceeding pro se,[1] brings this lawsuit against Laura Howard, Secretary of the Kansas Department of Aging and Disability Services, and Kris Kobach, Kansas Attorney General.[2]  Plaintiff has been civilly confined under the Kansas Sexually Violent Predator Act (KSVPA) since 2002.  He now challenges three aspects of the KSVPA, asserting that they violate his due-process rights.  Plaintiff first claims that denying him a retained examiner at his annual-review hearing violates due process.  Next, he argues that denying release based on his failure to complete a specific treatment program violates due process.  Finally, plaintiff asserts that due process entitles him to petition for final discharge without completing the KSVPA's various stages—*i.e.*, secure confinement, transitional release, and at least five

---

[1]      Plaintiff proceeds pro se.  The court construes his filings liberally and "hold[s] [them] to less stringent standards than formal pleadings drafted by lawyers[.]"  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court doesn't "assume the role of advocate for the pro se litigant."  *Hall*, 935 F.2d at 1110.

[2]      Plaintiff sues both defendants in their official capacities only.  Doc. 89 at 1.

years on conditional release.  The parties have filed motions for summary judgment.[3]  Doc. 90;

Doc. 94.  The court, as explained below, grants defendants' motion and denies plaintiff's.

## I.    Background[4]

The Kansas legislature passed the KSVPA after finding "that there exists an extremely

dangerous group of sexually violent predators who have a mental abnormality or personality

disorder and who are likely to engage in repeat acts of sexual violence if not treated for their

mental abnormality or personality disorder."  Kan. Stat. Ann. § 59-29a01.  With the KSVPA, the

legislature created an involuntary civil commitment process for those individuals deemed

---

[3]    Plaintiff calls his motion a "Motion for Judgment on Pleadings or in the Alternative for Summary Judgment" (Doc. 90).  Given the discovery conducted in the case, the court construes plaintiff's motion as one seeking summary judgment.

[4]    The court must note some struggles with summary-judgment fact presentation.  Our local rules require a party moving for summary judgment to provide a "concise statement of material facts" with numbered facts that "refer with particularity to those portions of the record upon which" the party relies. D. Kan. Rule 56.1(a).  For a party opposing summary judgment, the opposition brief must:  (i) follow the movant's numbering of summary-judgment facts, (ii) concisely state the material facts with a genuine issue for trial, and (iii) cite to the summary-judgment record for the source of any dispute.  D. Kan. Rule 56.1(b)(1).

Plaintiff's papers don't follow these rules.  Doc. 91; Doc. 102.  His motion, construed as one seeking summary judgment, doesn't provide a statement of material facts.  *See* Doc. 91.  Defendants insist that the court should deny plaintiff's motion for summary judgment "on this basis alone."  Doc. 99 at 2. That's a bit harsh.  Plaintiff relies heavily on the stipulated facts in the Pretrial Order and merely declined to repeat them.  Doc. 91 at 1.  The court won't use such a harsh sanction to meet plaintiff's attempt at efficiency.  Instead, the court will do its best with the facts from the Pretrial Order and from defendants' papers.

In contrast, plaintiff failed to respond to defendants' summary-judgment facts.  This failure has consequences.  If an opposing party fails to controvert facts explicitly provided in a movant's summary-judgment brief, then those facts are "deemed admitted for the purpose of summary judgment[.]"  D. Kan. Rule 56.1(a).  Because plaintiff's summary-judgment response has nothing to say about defendants' facts, the court considers defendants' facts uncontroverted.

Also, plaintiff asserts his own facts in response to defendants' motion for summary judgment. Doc. 102 at 2–7.  But he doesn't cite to the summary-judgment record for any of those facts.  *Id.*  Mixed in among those facts are many legal conclusions.  *See id.* at 2–3 (reciting and interpreting statutes). Cognizant of plaintiff's status as a pro se litigant, the court does its best to identify and rescue the relevant, undisputed facts—when properly supported—from this chaos.

sexually violent predators. The KSVPA provides that an individual determined to be a sexually violent predator is "committed to the custody of the secretary for aging and disability services for control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." *Id.* § 59-29a07(a). Because plaintiff's due process claims here implicate the KSVPA's treatment stages and review process, the court describes each in more detail, below.

### *Secure Confinement*

The KSVPA treatment program has three stages: secure confinement, transitional release, and conditional release. The first stage—secure confinement—has its own three tiers. Tier One and Tier Two involve highly structured inpatient treatment. Doc. 96-6 at 3. (Def. Ex. E). At Tier Three, the individual relocates to a reintegration facility. *Id.* To advance among the tiers, an individual must request advancement, and the individual treatment team reviews the request. *Id.* If the treatment team approves, then a progress review panel conducts its own review. *Id.* The progress review panel "consists of a group of clinical and administrative staff familiar with the assessment and treatment of sexual offenders; members also include clinicians not employed by" the treatment program or the state hospital that administers the program. *Id.* at 8. The progress review panel must "consider all pertinent information." Doc. 96-7 at 4 (Def. Ex. F). This includes "documented observations or resident behavior, therapist input, resident input, established risk factors, and other factors suggested by research and best practices." *Id.* After completing all three tiers of secure confinement, the individual moves to transitional release. Doc. 96-6 at 9 (Def. Ex. E).

### *Transitional Release*

During transitional release, therapy continues, and the treatment program seeks to make individuals increasingly self-sufficient. *Id.* at 10. To move from inpatient services to transitional

3

release, an individual must secure a transitional-release hearing in one of two ways.  First, the person may show "probable cause to believe the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release" at an annual-review hearing.  Kan. Stat. Ann. § 59-29a08(d).  Alternatively, the KDADS Secretary may determine the same and authorize the person to petition the court for transitional release.  *Id.* § 59-29a10(a)(1).  At the transitional-release hearing, the burden shifts to the state "to prove beyond a reasonable doubt that the person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in repeat acts of sexual violence."  *Id.* § 59-29a08(g).  Once in transitional release, a person is eligible to petition for conditional release, which proceeds through the same hearing process.  *Id.* §§ 59-29a08(b), 59-29a18.

### *Conditional Release*

A person eligible for conditional release must accept a treatment plan established by the court.  *Id.* § 59-29a19(a).  If the person violates the treatment plan—as determined by a conditional release monitor—his monitor may request that the court issue an emergency ex parte order to return the person to the secure commitment facility.  *Id.* § 59-29a19(b).  The court then must set a hearing where the state bears "the burden of proof to show probable cause that the person violated conditions of conditional release."  *Id.* § 59-29a19(d).  After the hearing, the court orders the person to the secure commitment facility, transitional release, or conditional release.  *Id.*  To qualify for a full discharge, the person must not violate the treatment plan's conditions for a minimum of five years.  *Id.* § 59-29a19(e).

### *Annual Reviews*

Each person committed under the KSVPA must receive an annual exam of his mental condition.  Kan. Stat. Ann. § 59-29a08(a).  The KDADS secretary provides the individual with

an annual written notice of his "right to petition the court for release over the secretary's objection." *Id.* An individual can waive this right. *Id.* The KDADS Secretary then forwards the annual report, the annual notice, and any waiver, to the court who committed the individual under the KSVPA. *Id.* The court files the notice and report, then forwards a copy to the Attorney General. *Id.*

The individual has 45 days after the court files its notice to request an annual-review hearing. *Id.* § 59-29a08(b). If the hearing is a contested one, then the topic of the hearing depends on the individual's treatment stage. For example, an individual in secure confinement seeking transitional release shall receive a hearing to consider whether he is entitled to transitional release. *Id.* And only an individual "in transitional release shall be permitted to petition for conditional release." *Id.* An individual who reaches conditional release can petition for final discharge only after "a minimum of five years has passed in which the person has been free of violations of conditions of such person's treatment plan[.]" *Id.* Separately, the court also concludes, below, an individual may petition for final discharge at any time under Kan. Stat. Ann. § 59-29a11. *See below* § III.E.

### *Plaintiff*

In December 2001, the state of Kansas petitioned the Wyandotte County District Court to commit plaintiff under the KSVPA. Doc. 89 at 2 (PTO ¶ 2.a.iii.). Plaintiff and the state stipulated to KSVPA commitment in May 2002. *Id.* (PTO ¶ 2.a.iv.).

In 2015, at plaintiff's annual review, the state stipulated that probable cause existed that plaintiff's mental abnormality or personality disorder had changed significantly, rendering him safe for transitional release. *Id.* (PTO ¶ 2.a.v.). Plaintiff requested a jury trial to determine whether he was safe for transitional release. *Id.* (PTO ¶ 2.a.v., vii.). At trial, a clinical psychologist testified during plaintiff's case-in-chief. *Id.* (PTO ¶ 2.a.vi.). The clinical

psychologist testified that plaintiff didn't suffer from pedophilia.  Doc. 96-9 at 15 (Tr. 30:4–6).  The psychologist further testified that plaintiff would be safe for placement in transitional release.  *Id.* at 21 (Tr. 36:10–21).

Ultimately, the jury found that plaintiff's mental abnormality remained such that it was not safe to place him in transitional release, and, if transitionally released, plaintiff likely would engage in acts of sexual violence.  Doc. 89 at 2–3 (PTO ¶ 2.a.vii.).

### *Plaintiff's 2021 Proceedings*

In April 2021, plaintiff had his annual exam of his mental condition.  *Id.* at 3 (PTO ¶ 2.a.viii.).  In June 2021, defendant Howard filed the following with the Wyandotte County District Court:  a letter, plaintiff's annual exam, and the annual written notice of plaintiff's right to petition for release.  *Id.* (PTO ¶ 2.a.x.).

At some unspecified point during 2021, in connection with his annual exam, plaintiff retained a psychologist to evaluate him.  *Id.* at 3 (PTO ¶ 2.a.xi.).  He asked the Wyandotte County District Court for an order allowing the psychologist to visit and evaluate him.  *Id.*  And he asked for legal counsel, which the state court appointed.  *Id.* (PTO ¶¶ 2.a.xi.–xii.).  Plaintiff's counsel then requested a hearing and requested that a qualified professional evaluate plaintiff.  *Id.* (PTO ¶ 2.a.xiii.).

The state court granted plaintiff's request for a hearing.  *Id.* (PTO ¶ 2.a.xiv.).  At the annual-review hearing held in early September 2021, the state court denied plaintiff's request to have his own examiner examine him.  *Id.*  The state court ultimately found that plaintiff hadn't established probable cause to believe that his mental abnormality or personality disorder had changed so significantly that he was safe for transitional-release placement.  *Id.*  The state court thus denied plaintiff a transitional-release hearing.  *Id.*

In late September 2021, the state court issued a Journal Entry[5] finding that, based on plaintiff's hostility to staff and his need to work on his emotional regulation, no need existed for an examiner to visit with plaintiff. *Id.* (PTO ¶ 2.a.xv.). The Journal Entry confirmed the court's decision to deny plaintiff's request for a visit with a qualified professional. *Id.* The Journal Entry also found that plaintiff had a "wall" impeding his progression in the program. *Id.* at 3–4 (PTO ¶ 2.a.xvi.) The Journal Entry concluded that plaintiff was in the high need and risk category, with a need to work on his treatment of others, disrespect of the rules and persons, and impulsivity. *Id.* at 4 (PTO ¶ 2.a.xvi.). And the Journal Entry confirmed the state court's finding that plaintiff's mental abnormality or personality disorder had not changed enough to render him safe for transitional release. *Id.*

### Plaintiff's Current Status

In September 2024, plaintiff moved to "Tier 3" of secure confinement. *Id.* (PTO ¶ 2.a.xvii.). He resides at a Reintegration Facility in Parsons, Kansas. *Id.* He can leave the campus for activities, like working at his job. *Id.* Though plaintiff has stipulated that he resides in secure confinement, at times, he asserts that he is in transitional release. Doc. 102 at 11. The court disregards this assertion. To the extent that plaintiff tries to bring a claim based on his current classification, the Pretrial Order doesn't contain such a claim. It's waived.

## II.    Legal Standard

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard dictates that the court "view the evidence and make inferences in the light most favorable to the non-movant." *Nahno-Lopez v. Houser*,

---

[5]    Kansas state courts commonly refer to orders or other significant docket entries as a Journal Entry.

625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  The specific "facts must be identified

by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."

*Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144

F.3d at 671).  Affidavits and testimony "must be based upon personal knowledge and set forth

facts that would be admissible in evidence; conclusory and self-serving affidavits are not

sufficient."  *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022)

(quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut."

*Celotex*, 477 U.S. at 327.  Instead, it represents an important procedure "designed 'to secure the

just, speedy and inexpensive determination of every action.'"  *Id.* (quoting Fed. R. Civ. P. 1).

## III.    Analysis

Plaintiff asserts that the following features of the KSVPA violate his due-process rights:

1.  Denying an independent expert witness at an annual-review hearing;

2.  Denying release based on failure to complete the treatment program; and

3.  Denying individuals the ability to petition for discharge if they haven't completed conditional release.

Doc. 89 at 10–11 (PTO ¶ 4.a.i.–iii.).  As remedy, plaintiff seeks a declaration that these denials

violate his due-process rights under the Fourteenth Amendment.  *Id.* at 11 (PTO ¶ 5.a.i.–iii.).[6]

The court takes up plaintiff's three claims, in sequence, below.  But, first, it must address

defendants' arguments that the court lacks jurisdiction.  Defendants make two arguments on this

front:  sovereign immunity and standing.  *See Normandy Apartments, Ltd. v. U.S. Dep't of Hous.*

*& Urb. Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009) ("The defense of sovereign immunity is

---

[6]    Throughout his papers, plaintiff deviates from these three claims.  *See, e.g.*, Doc. 102 at 17 (challenging KSVPA as "not evidence based nor empirically studied"); *id.* at 17–18 (relitigating conditional-release claim that court previously found plaintiff lacked standing to assert).  The court disregards all claims falling outside the three articulated in the Pretrial Order.  *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims . . . not included in the pretrial order are waived[.]").

jurisdictional in nature, depriving courts of subject-matter jurisdiction where applicable."); *Ceska Zbrojovka Defence SE v. Vista Outdoor, Inc.*, 79 F.4th 1255, 1259 (10th Cir. 2023) ("If a plaintiff lacks standing, the court lacks subject-matter jurisdiction."). The court begins with sovereign immunity.

### A.    Sovereign Immunity

Defendants argue that they deserve the protection provided by sovereign immunity. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). And sovereign immunity "applies not just to suits brought against states themselves but also to suits against a state official in his or her official capacity." *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (quotation cleaned up).

There's a narrow exception to this form of total immunity for state officials, however, created by *Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte Young*, "a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. at 159–60). Under *Ex parte Young*'s exception, a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and plaintiff seeks prospective relief only. *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021).

To come within the *Ex Parte Young* exception, "the state official must have some connection with the enforcement of the challenged statute." *Free Speech Coal.*, 119 F.4th at 736

(quotation cleaned up).  "Defendants are not required to have a 'special connection' to the unconstitutional act or conduct."  *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007).  Instead, the defendant "must have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty[.]"  *Id.* (quotation cleaned up). "'The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact[.]'"  *Id.* (quoting *Ex parte Young*, 209 U.S. at 157).

Defendants insist that they lack the requisite connection to the enforcement of the KSVPA.  Doc. 96 at 11–12.  For plaintiff's first claim about expert witnesses, defendants assert that the state court determines whether plaintiff has shown good cause for an expert—not the Attorney General, not the KDADS Secretary.  *Id.* at 12.  For plaintiff's second claim about failing to complete the treatment program, defendants point out that the KSVPA grants authority to determine whether to release an individual to the state court.  *Id.*  And for plaintiff's third claim about petitioning for discharge, defendants again rely on the KSVPA's grant of authority to state courts.  *Id.* at 13.  That is, they argue, only the state court can determine whether to discharge an individual from the KSVPA.  *Id.*  In sum, defendants believe plaintiff's remedy lies solely with the trial judge; they aren't the ones denying plaintiff his due-process rights. Defendants are wrong.

Defendants' argument confuses enforcement with resolution.  State courts "do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties."  *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021).  Indeed, in *Whole Woman's Health*, the Supreme Court concluded that state-court judges and clerks fell outside *Ex*

*parte Young*'s exception, but the state-court official charged with enforcing the law fell within *Ex parte Young*'s exception. *Id.* at 39, 46.

Defendants' confusion aside, the Attorney General and the KDADS Secretary satisfy our Circuit's requirement that defendants must bear "some connection with the enforcement of the act[.]" *Prairie Band*, 476 F.3d at 828 (quotation cleaned up). The Attorney General files the action that gets a person committed under the KSVPA in the first place. Kan. Stat. Ann. § 59-29a04(a). The Attorney General also represents the state during contested annual-review procedures for transitional release. *Id.* § 59-29a08(g). And the Attorney General represents the state in a contested hearing about conditional release. *Id.* § 59-29a10(b)(1).

Defendant Howard—the KDADS Secretary—also possesses the requisite connection with the KSVPA. "By law, sexually violent predators are committed to the [KDADS] Secretary's custody for control, care, and treatment." *Brull v. Jordan*, 246 P.3d 413, 2011 WL 420700, at *4 (Kan. Ct. App. 2011) (citing Kan. Stat. Ann. § 59-29a07(a) (2009)). The KDADS Secretary plays a vital role in the annual-review process. The Secretary must "provide the person with an annual written notice of the person's right to petition the court for release over the secretary's objection." Kan. Stat. Ann. § 59-29a08(a). The Secretary also must "forward the annual report, as well as the annual notice and waiver form, to the court that committed the person[.]" *Id.* What's more, the Secretary can determine that an individual's mental abnormality or personality disorder has changed materially enough that the individual is safe for transitional release and authorize an individual to petition for transitional release. *Id.* § 59-29a10(a)(1). The same is true for conditional release. The Secretary can authorize a person to petition for conditional release if "the secretary determines that the person's mental abnormality or

12

personality disorder has significantly changed so that the person is not likely to engage in repeat acts of sexual violence if placed in conditional release[.]" *Id.* § 59-29a10(b)(1).

It's true. Defendants can't force a court to consider plaintiff's expert or order his release. But that's not dispositive. For example, in *Doe v. DeWine*, the Sixth Circuit considered a due-process challenge to Ohio's sex-offender registration and notification laws, brought by a plaintiff whom a state court had declared a sexual predator. 910 F.3d 842, 846 (6th Cir. 2018). Plaintiff sought a declaration that the Ohio law was unconstitutional and an order for a hearing to determine plaintiff's dangerousness. *Id.* at 847. Plaintiff sued, among others, Ohio's Attorney General and its Superintendent of the Ohio Bureau of Criminal Investigation. *Id.* The Attorney General and the Superintendent asserted that *Ex Parte Young* didn't apply to them because neither of them enforced the challenged laws—plaintiff registered as a sex offender with the sheriff and only local prosecutors could bring a criminal action against plaintiff. *Id.* at 848.

The Sixth Circuit disagreed, holding that defendants' "lack of direct criminal enforcement authority" didn't foreclose the *Ex Parte Young* exception. *Id.* The Attorney General and Superintendent were "actively involved with administering [Ohio's] sex-offender laws" by promulgating regulations, operating the sex-offender database, and sending notifications to the community. *Id.* at 849 (quotation cleaned up). Though defendants couldn't hold a reclassification hearing for plaintiff, they disseminated information about plaintiff that plaintiff claimed was false, and plaintiff wanted to enjoin defendants from doing so until she received a due-process hearing. *Id.* The Sixth Circuit thus concluded that the state officials fell within the scope of *Ex parte Young*. *Id.*

So too here. As already demonstrated, the Attorney General and the KDADS Secretary are "actively involved with administering" the KSVPA. *Id.* (quotation cleaned up). Both are

13

involved heavily in the annual-review process—the source of one of plaintiff's claims. The KDADS Secretary sets the treatment plan—the source of plaintiff's two other claims. This nexus suffices to bring defendants within the scope of *Ex parte Young*. The court thus rejects defendants' sovereign-immunity argument. It turns next to defendants' related argument that plaintiff lacks standing.

### B.    Standing

The court previously concluded that plaintiff has standing to bring his three claims. Doc. 52 at 21–24. Defendants now renew their standing argument. Doc. 96 at 15. The court begins with the legal ingredients that establish standing.

Article III of our Constitution limits federal courts' jurisdiction to "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To present a case or controversy under Article III, a plaintiff must establish that he has standing to sue. *Id.* Article III's standing analysis requires three things:

(1) an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[;]"

(2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court;" and

(3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation cleaned up).

The court begins with defendants' argument about injury. It then addresses the other two elements—causation and redressability—together.

### 1.    Injury

On the injury element, defendants assert that plaintiff hasn't established an injury in fact for his first claim (based on the decision to deny him an independent examiner) and his second

14

claim (about denying release based on a failure to complete a specific treatment program).  Doc. 96 at 15–17.  In a nutshell, defendants argue that events occurring during plaintiff's 2021 annual review won't happen again.  *Id.* at 16.  In 2021, plaintiff refused to let the KDADS-selected psychologist interview him and, instead, wanted to proffer a report from his own, independently retained psychologist.  In defendants' telling, plaintiff's refusal to participate in this interview is why the state court rejected plaintiff's expert.  And, now that plaintiff has agreed to meet with the KDADS-selected psychologist and he's progressed in the program, he no longer can sustain an injury in fact.  But defendants' argument misportrays the summary-judgment record.

The state court didn't ever rule that it rejected plaintiff's request for an expert because he refused to participate in an interview.  According to the state-court Journal Entry, the court denied plaintiff's request based on:  his hostility toward staff and others; his need to work on his emotional regulation; a lack of need for an examiner; plaintiff's high need and risk category; a need to work on treatment of others; plaintiff's disrespect of the rules and persons; and plaintiff's impulsivity.  Doc. 89 at 3–4 (PTO ¶ 2.a.xv.–xvi.).  Nowhere does the Journal Entry mention plaintiff refusing to meet with the KDADS-selected psychologist.  Defendants thus don't provide any factual support for their contention that the state court rejected plaintiff's request for an expert based "in part[] on his refusal to meet with the state-provided examiner."[7]  Doc. 96 at 17.  Because defendants' standing argument lacks support in the summary-judgment record, the court rejects it.

### 2.    Causation and Redressability

---

[7]    Defendants' misunderstanding arises from the Kansas Court of Appeals decision affirming the district court's holding denying plaintiff's request for his own examiner.  Doc. 96 at 16 (quoting *In re Burch*, 515 P.3d 296 (Kan. Ct. App. 2022)).

Defendants next assert that plaintiff can't show the second and third elements of standing: causation and redressability. Doc. 96 at 17–18. This argument is bound up in their sovereign-immunity argument. Defendants assert that "only the judicial branch has the enforcement authority that would satisfy the causation and redressability requirements of standing." *Id.* at 18. As just explained, this is just wrong. The Attorney General and KDADS Secretary are involved—heavily—with enforcing the KSVPA.

Defendants rely on an unpublished decision, *Bishop v. Oklahoma*, where our Circuit held that the Governor and Attorney General weren't proper defendants to a lawsuit challenging Oklahoma's prohibition on same-sex marriage. 333 F. App'x 361, 365 (10th Cir. 2009). Defendants misplace their faith in *Bishop*'s holding. *Bishop* was a narrow decision, in which the challenged action—marriage license and recognition—rested entirely with a district-court clerk. *Id.* Oklahoma's district-court clerks were judicial personnel, controlled purely by the state courts. *Id.* So, the Governor and the Attorney General had no power beyond their generalized enforcement powers. *Id.* *Bishop* thus depends heavily on the specific role of the specific state official under a specific state law. Indeed, our Circuit confined *Bishop* to its facts in *Kitchen v. Herbert*, 755 F.3d 1193, 1202 (10th Cir. 2014). Here, *Bishop* doesn't control because, as already demonstrated, the Attorney General and KDADS Secretary have much to do with enforcing the KSVPA.

In a last-second heave, defendants argue that plaintiff failed to respond to their standing argument, so he failed to shoulder his burden to demonstrate standing. The court again disagrees with defendants. Their first argument about injury misapprehends the record, so defendants have failed to shoulder their own summary-judgment burden to make arguments supported by competent summary-judgment evidence. As for defendants' second argument—redressability

and causation—plaintiff devotes a significant part of his brief to arguing that defendants have the requisite enforcement powers. Doc. 102 at 21–23.

The court previously has held that plaintiff possessed standing to bring these claims. Doc. 52 at 21–24. Defendants have failed to convince the court that circumstances have shifted significantly since. The court thus concludes plaintiff has standing, conferring the court with jurisdiction. The court now moves to the merits of plaintiff's claims, beginning with his claim about an examiner at his annual-review hearing.

### C.    Examiner[8]

Plaintiff's first claim asserts a violation of his due-process rights based on the decision denying him an independent examiner at his annual-review hearing. He insists that this "is a question of law and not of fact[.]" Doc. 91 at 4. Under the Fourteenth Amendment, "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law[.]" U.S. Const. amend. XIV. "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). To better address these general due-process principles in context, the court begins with a brief explanation of the KSVPA's annual-exam process.

Every individual committed under the KSVPA receives an annual exam. Kan. Stat. Ann. § 59-29a08(a). Though the statute doesn't explicitly say who arranges that exam, the KSVPA

---

[8]    The court construes this claim as a procedural-due-process claim. "The line between substance and procedure is somewhat blurry." *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012). As explained below, plaintiff doesn't have a right under Kansas law to an examiner. *See below* n.11. Instead, he has a liberty interest implicated by civil confinement. So, the correct question asks about the procedures the state must follow before it can re-commit plaintiff for another year. *See Elliott*, 675 F.3d at 1244 (explaining when state law implicates procedural due process and when it implicates substantive due process). Indeed, framing plaintiff's claim as a substantive-due-process claim makes little sense. Requiring plaintiff to show good cause to present his retained examiner wasn't a deprivation of liberty "so arbitrary it shocks the judicial conscience[.]" *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019).

places the individual in the KDADS Secretary's custody for care, control, and treatment. *Id.* § 59-29a07(a). Indeed, defendants themselves assert that the KDADS Secretary is the one who provides for the annual exam. Doc. 99 at 19. So, the KDADS Secretary arranges for an individual's annual exam, then forwards an annual report to the court who committed the individual.[9] Kan. Stat. Ann. § 59-29a08(a). And at the individual's request, the committing court holds an annual-review hearing. *Id.* § 59-29a08(b).

Meanwhile, the KSVPA allows plaintiff to retain an expert for his annual review—a second expert. The KSVPA provides that a "person may retain, or if the person is indigent and so requests the court may appoint, an examiner pursuant to K.S.A. 60-235[.]" *Id.* § 59-29a08(c). Section 60-235 is a rule of civil procedure that governs physical and mental examinations. *Id.* § 60-235. This rule requires an individual to show good cause for examination. *Id.* § 60-235(a)(2)(A). And that's the requirement concerning plaintiff. In plaintiff's view, if he has retained a psychologist for an exam,[10] then the court and defendants should allow that psychologist to examine him.[11] The court evaluates this claim next, starting with the framework of the due-process clause.

---

[9]    Plaintiff complains that the KDADS Secretary doesn't have to comply with the good-cause requirement of Kan. Stat. Ann. § 60-235 before sending an examiner to evaluate him. Doc. 91 at 7. That doesn't matter. Plaintiff's lawsuit doesn't include a claim that addresses his inability to challenge the annual-review examiner. *See* Doc. 89 at 10–11 (PTO ¶ 4.a.i.–iii.). And "claims . . . not included in the pretrial order are waived[.]" *Wilson*, 303 F.3d at 1215.

[10]    Plaintiff conflates a retained examiner with an independent examiner. Doc. 91 at 4 ("Mr. Burch paid for an independent examiner[.]"). Another court has "defined an independent psychiatrist as one unassociated with the state, who will examine the patient and testify as to the need for institutionalization regardless of whether the testimony supports or rejects commitment or retention." *Goetz v. Crosson (Goetz II)*, 41 F.3d 800, 802 (2d Cir. 1994) (quotation cleaned up). Perhaps this definition leaves room to differentiate between independent examiners and retained examiners. But, because plaintiff uses retained examiner and independent examiner interchangeably, the court does so, too.

[11]    Plaintiff maintains that the KSVPA itself entitles him to a retained examiner. He's mistaken. Plaintiff cites Kan. Stat. Ann. § 59-29a06(c), which provides: "at any proceeding conducted under the Kansas sexually violent predator act, the parties shall be permitted to call expert witnesses." *See* Doc. 91

18

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quotation cleaned up). The three-prong balancing test articulated in *Mathews* governs the due-process inquiry. *See Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) (applying *Mathews* to due-process claim about indigent criminal defendant's right to psychiatrist). The three prongs are:

1. "the private interest that will be affected by the official action;"

2. "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and"

3. "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews*, 424 U.S. at 335. The court takes these three prongs out of sequence, and addresses the first prong (plaintiff's interest), then the third prong (defendants' interest), and concludes with the second prong (erroneous deprivation).

Starting with the first *Mathews* prong: plaintiff's private interest. Defendants concede, as they must, that civil commitment implicates plaintiff's liberty interest. Doc. 99 at 17. Indeed, the Supreme Court long "has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441

---

at 12. In plaintiff's view, this subsection entitles him to an independent examiner at his annual review. But, just a few lines down, the statute continues, providing "the provisions of this section relating to jury trials shall not apply to proceedings for annual review[.]" Kan. Stat. Ann. § 59-29a06(f). So, a different section governs annual reviews, and that provision provides a person *may* retain an examiner. *Id.* § 59-29a08(c) Indeed, plaintiff's cited KSVPA section—§ 59-29a06— is titled "Pretrial conference; trial; counsel; examiners and experts; indigent persons; jury; composition; peremptory challenges."

As a result, § 59-29a06(c)—and its statement that the parties *shall* be allowed to call experts— doesn't apply to post-commitment, annual-review hearings. To hold otherwise would create a conflict within the KSVPA, or allow the general to govern the specific—two things that Kansas courts strive to avoid. *See Kan. Racing Mgmt., Inc. v. Kan. Racing Comm'n*, 770 P.2d 423, 431 (1989) ("General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling.").

19

U.S. 418, 425 (1979). But plaintiff's liberty interest here is slightly diminished. An individual committed under the KSVPA is committed only for a year, until the next annual review. *See Harvey v. Commonwealth*, 829 S.E.2d 534, 541 (Va. 2019) (finding diminished liberty interest, compared to criminal proceedings, because Virginia's sexually violent predator law committed plaintiffs only until annual review). And the Kansas Court of Appeals has suggested—albeit in dicta of an unpublished opinion—that when an individual "has already been adjudicated a sexually violent predator," then his "liberty interest is diminished relative to that of a person subject to an initial commitment proceeding." *In re Care & Treatment of Williamson*, 200 P.3d 38, 2009 WL 248229, at *5 (Kan. Ct. App. 2009).

The third *Mathews* prong considers the state's interest. Defendants claim an interest in "ensuring that a person is not released before that person is safe to be released to the public." Doc. 99 at 20. This also is a long-recognized interest. *See Allen v. Illinois*, 478 U.S. 364, 373 (1986) (crediting state's interest in protecting community from sexually dangerous persons). Defendants also claim an interest in judicial efficiency. Doc. 99 at 20.

For the second *Mathews* prong, the court must consider the value of the good-cause requirement for a retained examiner and the possibility that the good-cause requirement could deprive plaintiff of his liberty erroneously. Defendants insist that the good-cause requirement presents little risk of erroneous deprivation. Doc. 96 at 24. This is so, they assert, because the annual review follows the initial commitment proceedings, and those initial commitment proceedings contain a variety of protections. Defendants make a good point. The KSVPA provides for an independent examination at the initial commitment proceeding. Kan. Stat. Ann. § 59-29a06(b). This initial commitment proceeding contains additional procedural protections, including the right to counsel, the ability to call an expert, and a right to a jury trial. *Id.* § 59-

20

29a06(b)–(d).  And the burden of proof is beyond a reasonable doubt.  *Id.* § 59-29a07(a).  These robust procedural protections in the initial commitment proceedings serve as backdrop for the annual-review proceedings challenged here.  They reduce the risk of an erroneous deprivation.

The annual-review process itself also contains procedural protections.  An individual can retain his own examiner; he merely must demonstrate good cause.  *Id.* § 59-29a08(c); *Id.* § 60-235(a)(2)(A).  Though the KSVPA doesn't define good cause, it's a relatively low bar.  *See Good Cause*, Black's Law Dictionary (12th ed. 2024) (defining good cause as a "legally sufficient reason"); *see also In re Guardianship of Burrell*, 367 P.3d 318, 321 (Kan. Ct. App. 2016) (using Black's Law Dictionary definition of good cause to interpret phrase in Kansas statute).  And an individual has the right to an attorney during the annual-review process.  Kan. Stat. Ann. § 59-29a08(e).  Plaintiff's burden of proof at these hearings is low; he need only show probable cause.  *Id.* § 59-29a08(d).  What's more, if the KDADS Secretary determines that an individual is safe for transitional release or conditional release, the KSVPA *requires* the Secretary to allow the individual to petition the court for transitional or conditional release.  *Id.* § 59-29a10(a), (b).  These features, combined with the initial commitment procedures, reduce the risk of an erroneous deprivation to a slight one.

At bottom, plaintiff seeks to advance to a "battle of the experts"—his retained expert countering the KDADS-provided expert's annual review.  "In the ordinary adversary system, we tolerate and sometimes require a 'battle of the experts' because it is thought to increase the accuracy of a trial's outcome."  *Goetz v. Crosson*, 967 F.2d 29, 34 (2d Cir. 1992).  But this logic doesn't apply to involuntary civil commitment.  The "interest of the parties to a civil commitment proceeding are not entirely adverse."  *Id.*  The KDADS Secretary provides the examiner for the annual review, but the Attorney General's office is the one in charge of

prosecuting KSVPA cases.  *See* Kan. Stat. Ann. § 59-29a08(g).  So, the examiner "is not the prosecution's expert or the defense's expert."  *Harvey*, 829 S.E.2d at 542.  There's no reason to presume the KDADS-provided examiner will always recommend commitment, nor any reason to presume that plaintiff's retained expert will contradict the KDADS-provided examiner.  *People v. Burns*, 809 N.E.2d 107, 118 (Ill. 2004) (refusing, when considering whether Illinois's law governing sexually dangerous persons entitles those persons to an independent psychiatric expert when petitioning for post-commitment release, to "presume that an independent psychiatric expert will always testify contrary to the Department professionals or will always testify in favor of discharge"); *see also Harvey*, 829 S.E.2d at 542 ("There is no reason to believe that the experts employed by the Department will not give an honest and unprejudiced assessment of a [committed sexually violent predator's] suitability for conditional release.").

In sum, the *Mathews* framework plays out in a way that favors defendants.  Plaintiff possesses a recognized—but slightly diminished—liberty interest.  And the procedures in place suffice to protect that interest.  The good-cause requirement to present an expert doesn't pose much of a risk of erroneous deprivation of liberty.  So, due process doesn't require that plaintiff have a right to present his own examiner without showing good cause.  *See Williamson*, 2009 WL 248229, at *6 (concluding in dicta that due process didn't require appointment of independent psychiatrist at KSVPA at annual review).

Trying to avoid this result, plaintiff invokes *Ake v Oklahoma*, 470 U.S. 68 (1985).  Doc. 91 at 10.  In *Ake*, the Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial," due process requires the state to, "at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the

22

defense." 470 U.S. at 83.  The Court identified an "extremely high" risk of "inaccurate resolution of sanity issues" if a defendant, because of his poverty, couldn't access a psychiatrist to help present a defense.  *Id.* at 82.  *Ake* continued, however, clarifying:  "This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own."  *Id.* at 83.  Rather, the *Ake* Court sought to give indigent defendants access to a competent psychiatrist—in specific circumstances—and decidedly left it to the states to determine how to implement this right.  *Id.*

*Ake* doesn't control here.  First of all—and most of all—*Ake* was a criminal case.  KSVPA cases are civil in nature.  *Kansas v. Hendricks*, 521 U.S. 346, 361–69 (1997) (holding that the KSVPA doesn't establish criminal proceedings because it's not punitive in nature).  So, *Ake*'s value is limited.  *See Harvey*, 829 S.E.2d at 540 (differentiating *Ake* from civil commitment proceedings under Virginia's sexually violent predator law); *People v. Angulo*, 30 Cal. Rptr. 3d 189, 195 (Cal. Ct. App. 2005) (deciding that *Ake* didn't control whether individual committed under California's sexually violent predator law had a constitutional right to confidential expert assistance because SVP proceedings were civil).  And even if *Ake* did control, it wouldn't mandate plaintiff's choice of an expert—just access to one.   Second, unlike the scheme challenged in *Ake*, the KSVPA indeed provides plaintiff with his own examiner at his annual review—he just has to show good cause for it.

Defendants thus are entitled to summary judgment against plaintiff's first claim.[12]

---

[12]    In light of plaintiff's pro se status, the court must construe his due-process claim as both an as-applied claim and a facial challenge.  But, in this case, there's little difference between the two.  The summary-judgment facts show only two things:  (1) plaintiff gets an annual review every year and (2) the state court denied his request for an exam by his retained examiner.  This second fact doesn't matter much because, thanks to *Ex Parte Young*, plaintiff can seek only prospective relief.  *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (explaining that *Ex Parte Young* "may not be used to [secure] a declaration that a state officer has violated a plaintiff's federal rights in the past.").  So, given

### D.    Treatment Program

Plaintiff's second due-process claim challenges "the practice of denying release based on [a] failure to complete the treatment program[.]" Doc. 89 at 10 (PTO ¶ 4.a.ii.).  The court must begin this claim's analysis with a correction.  Plaintiff reads the KSVPA to "require a district court in Kansas to automatically deny an annual review to a person that is not participating in the treatment program." Doc. 102 at 4[13] (citing Kan. Stat. Ann. § 59-29a08).  That's incorrect.  The pertinent subsection provides a presumption that, if an individual doesn't participate in the treatment program, then the person can't show probable cause that he's safe for release.  Kan. Stat. Ann. § 59-29a08(d).  It's a presumption—not an automatic denial.  The court agrees with defendants.  This kind of presumption doesn't violate due process.[14]

The *Mathews* analysis of this claim resembles the analysis of plaintiff's good-cause-for-an-examiner claim.  Plaintiff has an interest in his liberty.  And the state possesses an interest in ensuring that an individual remains in the treatment program until he no longer presents a danger to the public.  So, this claim comes down to the value of the presumption, and whether the presumption risks erroneously depriving plaintiff and others of their liberty.

The presumption has value.  The presumption incentivizes individuals to participate in the treatment plan.  The treatment plan is prescribed by experts.  And it's designed to treat plaintiff and others' mental abnormalities and personality disorders.  If an individual refuses

---

the lack of facts specific to plaintiff and his case, the court's conclusion applies to both plaintiff's facial challenge and his as-applied challenge.

[13]    Plaintiff's own motion doesn't analyze this claim beyond a cursory mention.  *See generally* Doc. 91.  So, the court relies on plaintiff's Response to defendants' motion:  Doc. 102.

[14]    Like plaintiff's due-process claim about expert witnesses, the court construes plaintiff's challenge to the KSVPA's presumption that plaintiff can't show probable cause as a procedural-due-process claim.

treatment, then it's unlikely that he's improved—*i.e.*, his mental abnormality or personality disorder has changed sufficiently.  As a result, the presumption doesn't present much of a risk of erroneous deprivation of liberty.  Recall the robust initial-commitment proceedings that come before any annual review.  Those proceedings make it less likely that the KSVPA will erroneously deprive plaintiff or anyone else of his liberty.  And the presumption, like most presumptions, is rebuttable—yet another safeguard against erroneous deprivation.  The court thus concludes that the presumption doesn't violate due process.

### E.    Petitioning for Discharge

Plaintiff's final due-process claim challenges "the fact of denying individuals the ability to petition for discharge if they haven't completed conditional release." [15]  Doc. 89 at 11 (PTO ¶ 4.a.iii.).  Plaintiff doesn't want to have to clear secure confinement, transition release, and at least five years of conditional release to request final discharge.  Doc. 91 at 15.  In his view, if the state court finds that an individual no longer meets the KSVPA's definition of a sexually violent predator, then the court still must "commit the individual under the KSVPA until" he's completed the various stages.  *Id.*  Defendants, for their part, work hard to justify the steps of the program to avoid running afoul of due process.  *See* Doc. 96 at 33–38.

The problem with plaintiff's claim is that the KSVPA indeed does allow plaintiff to file a petition for final discharge at any time—without the KDADS Secretary's permission.  This procedural mechanism comes from Kan. Stat. Ann. § 59-29a11(a).  In its entirety, it provides:

> If a person has previously filed a petition for transitional release, conditional release
> or final discharge without the secretary for aging and disability services approval
> and the court determined either upon review of the petition or following a hearing,

---

[15]    The court already concluded that plaintiff lacks standing to pursue claims about conditional release.  Doc. 52 at 14–15.  It also concluded that plaintiff's challenges to the conditional-release program aren't ripe because he isn't on conditional release.  *Id.* at 15 n.11.  The claim plaintiff raises here, at summary judgment, doesn't run afoul of this previous ruling.  The court construes plaintiff's claim as a broad one about petitioning for final discharge at any point—not just when on conditional release.

that the person's petition was frivolous or that the person's condition had not significantly changed so that it is safe for the person to be at large, then the court shall deny the subsequent petition, unless the petition contains facts upon which a court could find the condition of the petitioner had significantly changed so that a hearing was warranted.  Upon receipt of a first or subsequent petition from committed persons without the secretary's approval, the court shall endeavor whenever possible to review the petition and determine if the petition is based upon frivolous grounds and if so shall deny the petition without a hearing.

*Id.*  To be sure, it's an unusual provision.  But § 59-29a11 assumes that a person can file for final discharge without the KDADS's Secretary's approval.  And, according to *Hendricks*, that's an important procedural safeguard.

In *Hendricks*, the Supreme Court cataloged the KSVPA's procedural safeguards.  521 U.S. at 353.  And the Court emphasized § 59-29a11 is one of three avenues for a committed individual to seek review:  "even without the Secretary's permission, the confined person could *at any time* file a release petition."  *Id.* (emphasis added) (citing Kan. Stat. Ann. § 59-29a11).  In 1997, when the Court decided *Hendricks*, § 59-29a11 explicitly allowed for this mechanism.  The subsection kicked off:  "Nothing in this act shall prohibit a person from filing a petition for discharge pursuant to this act."  1994 Kan. Sess. Laws Ch. 316.[16]  In 2015, the Kansas legislature removed that sentence, as demonstrated in the below redline:

---

[16]    Kansas enacted the KSVPA in 1994.  It amended the KSVPA in 1995.  1995 Kan. Sess. Laws Ch. 193.  But the 1995 amendment didn't touch Kan. Stat. Ann. § 59-29a11.  *See generally id.*  So, the court cites the version from the 1994 session law.

<< KS ST 59–29a11 >>

59–29a11. (a) ~~Nothing in this act shall prohibit a person from filing a petition for transitional release, conditional release or final discharge pursuant to this act. However,~~ If a person has previously filed a petition for transitional release, conditional release or final discharge without the secretary for aging and disability services approval and the court determined either upon review of the petition or following a hearing, that the ~~petitioner's~~ | person's | petition was frivolous or that the ~~petitioner's~~ | person's | condition had not ~~so changed that the person was safe~~ | significantly changed so that it is safe for the person | to be at large, then the court shall deny the subsequent petition | , | unless the petition contains facts upon which a court could find the condition of the petitioner had ~~so changed~~ | significantly changed so | that a hearing was warranted. Upon receipt of a first or subsequent petition from committed persons without the secretary's approval, the court shall endeavor whenever possible to review the petition and determine if the petition is based upon frivolous grounds and if so shall deny the petition without a hearing.

2015 Kan. Sess. Laws Ch. 95.  So, the KSVPA no longer explicitly allows a committed individual to file for final discharge at any time.  But the rest of the § 59-29a11 assumes that it does.  The court thus concludes that § 59-29a11 implicitly allows the due process that plaintiff seeks:  the ability to petition for final discharge at any time.

Plaintiff's mistake (which defendants repeat) is focusing solely on Kan. Stat. Ann. § 59-29a08, the provision governing annual review.  Section 59-29a08 imagines an individual proceeding through each step of the KSVPA before petitioning for final discharge:  secure confinement to transitional release to conditional release to final discharge.  To that end, § 59-29a08 limits petitions for final discharge:  "Only a person in conditional release shall be permitted to petition for final discharge after a minimum of five years has passed in which the person has been free of violations of conditions of such person's treatment plan[.]"  Kan. Stat. Ann. § 59-29a08(b).  The court doesn't view this provision to conflict with § 59-29a11 because the two statutes represent separate avenues of review.[17]  And don't just take the court's word for it; the Supreme Court construed the statute that same way in *Hendricks*.  There, the Court listed three different avenues of review:  § 59-29a08, § 59-29a10, and § 59-29a11.  *Hendricks*, 521

---

[17]    To conclude otherwise and bar plaintiff (and other individuals) committed under the KSVPA from petitioning for final discharge would present serious due-process concerns.  The ability to petition for final discharge at any point is an important procedural safeguard that the Supreme Court emphasized when it upheld the KSVPA against a due-process challenge.  *Hendricks*, 521 U.S. at 353.

U.S. at 353. This means plaintiff can seek final discharge outside of the annual-review process devised in § 59-29a08.

In sum, plaintiff's core premise is a mistaken one. The KSVPA does indeed allow him to petition for final discharge under Kan. Stat. Ann. § 59-29a11—even if he hasn't completed conditional release. The court thus enters summary judgment against this claim.

## IV.        Conclusion

Plaintiff's Motion for Summary Judgment (Doc. 90) is denied. Defendants' Motion for Summary Judgment (Doc. 94) is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Summary Judgment (Doc. 90) is denied.

**IT IS FURTHER ORDERED THAT** defendants' Motion for Summary Judgment (Doc. 94) is granted.

**IT IS SO ORDERED.**

**Dated this 29th day of June, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**